(634 P.2d 159)

No. 52,103

MELVIN CLINKINGBEARD, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed September 11, 1981.

*N. M. Iverson, Jr.,* of Iverson & Iverson, P.A., of Arkansas City, for appellant.

*Richard B. Camp,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., REES and PARKS, JJ.

REES, J.: Petitioner was convicted of second-degree murder (K.S.A. 21-3402) upon entry of a guilty plea and sentenced to a term of not less than ten years nor more than life. He subsequently filed a pro se motion under K.S.A. 60-1507 attacking his sentence. Counsel was appointed. Request for return of the petitioner to appear and testify in the trial court was denied. Hearings were held. The motion was denied. Petitioner appeals.

The only issue on appeal is whether petitioner's guilty plea was knowing and voluntary.

A guilty plea entails a waiver of fundamental rights. A trial court may not accept a guilty plea unless procedures insuring protection of due process are followed. A process to be followed by the trial judge before he can accept a guilty plea is provided by statute. K.S.A. 22-3210. The statute was recently discussed in *Trotter v. State,* 218 Kan. 266, 268-269, 543 P.2d 1023 (1975), where it is said:

"The acceptance of guilty pleas is governed by K.S.A. 22-3210 which states in pertinent part:

" 'Before or during trial a plea of guilty . . . may be accepted when:

" '(1) The defendant or his counsel enters such plea in open court; and

" '(2) In felony cases the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

" '(3) In felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge [and] of the consequences of the plea; and

" '(4) The court is satisfied that there is a factual basis for the plea.

" '(5) In felony cases the defendant must appear and plead personally and a record of all proceedings at the plea and entry of judgment thereon shall be made and a transcript thereof shall be prepared and filed with the other papers in the case.'

"The procedure set out in the statute is in compliance with and embodies the requirements of due process as interpreted by the United States Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 23 L.Ed.2d 274, 89 S.Ct. 1709. (See *Widener v. State*, 210 Kan. 234, 499 P.2d 1123.) It has long been recognized that to satisfy the requirements of due process, a plea of guilty must be both knowing and voluntary. *E.g. Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938); *Miller v. Hudspeth*, 164 Kan. 688, 192 P.2d 147 (1948). The new due process requirement added by *Boykin* was 'that the record must affirmatively disclose' a knowing and voluntary plea. *Brady v. United States*, 397 U.S. 742, 747-48, n. 4, 25 L.Ed.2d 747, 90 S.Ct. 1463."

The record before us fails to "affirmatively disclose a knowing and voluntary plea."

Petitioner was charged with second-degree murder as defined in K.S.A. 21-3402:

"Murder in the second degree is the *malicious* killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony." (Emphasis added.)

Our case law holds that as it relates to the crime of murder, the term "maliciously" imports and includes the term "willfully." *State v. Childers*, 222 Kan. 32, Syl. ¶ 3, 36-39, 563 P.2d 999 (1977); *State v. Osbey*, 213 Kan. 564, Syl. ¶ 6, 571-572, 517 P.2d 141 (1973). Moreover, K.S.A. 21-3201 provides that criminal intent is an essential element of every crime defined in our criminal code, and that unless the statutory definition of the crime provides that the prohibited act is criminal if done in a wanton manner, "[p]roof of willful conduct shall be required to establish criminal intent." K.S.A. 21-3201(1). "Willful conduct" is statutorily defined as "conduct that is purposeful and intentional and not accidental. As used in this code, the terms 'knowing,' 'intentional,' 'purposeful,' and 'on purpose' are included within the term 'willful.' " K.S.A. 21-3201(2).

Because a guilty plea admits all elements of the crime charged, a voluntary guilty plea requires that the defendant understand those elements as they relate to the facts. *McCarthy v. United States*, 394 U.S. 459, 466, 22 L.Ed.2d 418, 89 S.Ct. 1166 (1969).

On the record in the present case, there was confusion as to the element of intent. Indicative of the confusion, we find the following exchange:

"THE COURT:   Mr. Clinkingbeard, on or about the 4th day of October of 1978, in Cowley County, Kansas, did you willfully, maliciously, without deliberation and premeditation, kill and murder Martin Dewayne Buell with a Springfield, Model 67, Series C, 20-gauge shotgun?
"THE DEFENDANT:   Not on purpose, sir.
"THE COURT: I didn't say you did it on purpose, I am asking you if you willfully and maliciously but without deliberation and premeditation—
"THE DEFENDANT: Yes, sir."

The petitioner's "not on purpose" response was an attempted denial that the shooting was intentional and willful. The court's response implies a confusing and erroneous definitional difference between "on purpose" and "willful." See K.S.A. 21-3201. At sentencing, petitioner again maintained the shooting "was an accident." We view the record as disclosing petitioner's continued denial of a criminal act.

In denying petitioner's K.S.A. 60-1507 motion, the trial judge relied in part on *North Carolina v. Alford,* 400 U.S. 25, 27 L.Ed.2d 162, 91 S.Ct. 160 (1970). *Alford* is discussed and explained by Justice White in his concurring opinion in *Henderson v. Morgan,* 426 U.S. 637, 648-649 n. 1, 49 L.Ed.2d 108, 96 S.Ct. 2253 (1976):

"We have permitted judgment to be entered against a defendant on his intelligent plea of guilty accompanied by a claim of innocence. We said in *North Carolina v. Alford,* 400 U.S. 25, 37 (1970):
" '[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.'
"We held that where 'a defendant *intelligently* concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt' a plea may be accepted even if accompanied by protestations of innocence. *Ibid.* (Emphasis added.) However, in that case the defendant pleaded guilty to second-degree murder after acknowledging that his 'counsel had informed him of the difference between second- and first-degree murder.' *Id.,* at 28-29. *Alford* is based on the fact that the defendant could intelligently have concluded that, whether he believed himself to be innocent and whether he could bring himself to admit guilt or not, the State's case against him was so strong that he would have been convicted anyway. Since such a defendant has every incentive to conclude otherwise, such a decision made after consultation with counsel

is viewed as a sufficiently reliable substitute for a jury verdict that a judgment may be entered against the defendant. Plainly, a defendant cannot 'intelligently' reach that conclusion if he does not know the elements of the crime to which he is pleading and therefore does not know what the State has to prove; and his ignorant decision to plead guilty under such circumstances is not a reliable indication that he is in fact guilty."

Here the record does not disclose an intelligent understanding by petitioner of the elements of the crime of second-degree murder.

*Alford* clearly requires that the record contain "strong evidence of actual guilt" before a trial judge may accept a guilty plea by a defendant protesting innocence. 400 U.S. at 37. The only evidence in the record before us concerning the factual basis for the plea is found in petitioner's affidavit:

"I, Melvin Clinkingbeard, being first duly Sworn upon my Oath, depose and says:

"That my Step-Son, Dawyne Breau [*sic*] and myself, along with some other individuals was having a small party over to my home where we was all doing some real heavy drinking.

"My son had pulled some dope out to smoke when his mother told him that he could not smoke any dope in the house. I did not care one way or the other. But my wife began to argue with him about this at which time my son grabbed her in the collar of her blouse and began shaking her with great force. As he did this, he was saying that he was going to get the gun and end the whole lot of us.

"My wife was trying to reason with him. All the individuals in my house heard him, so I became real concern about the shotgun that was hanging on the living-room wall. I did not know whether or not I had removed the shells or not, so I went and took it down to see. I did not want my son to find the gun with shells in it and I know that he was just drunk. I was going to put the gun up until he was sober-up. But as I removed the shot-gun, I notice that it had some shells in it, and I began to eject the remaining shells when my son ran over and grabbed the barrow of the gun which droved me back some and as he did the gun discharged. The shells striking him in the chest. I thought the safety hatch was on.

"I did not see him coming up on me because I'm blind in one eye. If I had seen him, I would have been able to talk to him and cool him down. After the gun went off, I guess I was in shock because I just walked out the front door. That's all I remember. The next thing I remember was being placed in a room at the Police Department and talking to an individual whom had told me that he was the County District Attorney. He began to ask me questions about the shoting. I do not remember to this day what I told that person.

"Also I talked to the police that was in the room with him. I do not remember what I told them either. After three (3) days in jail, I was told that my son had die. I asked the officials at the jail to allow to attend the furnual and that said no, that it would be a bad thing for me to do.

"But I did not kill my son intentionally, it was an accident. My son was drunk on alcohol and dope. He would have never did what he done if he wasn't in that shape. I raised that boy and love him, I would never hurt him intentionally or none of my childerns.

"I am not a criminal, I have never been in trouble in all my forty some years. I'm not a violent person. The individuals whom was at my home doing this accident can tell you the truth of the matter. I did not kill my son, he die of an accident so help me God."

The version of the facts appearing in the affidavit, the only one appearing in the record, could support verdicts of voluntary manslaughter or involuntary manslaughter or innocence of a crime. The record before us includes no "strong evidence" of the intent necessary to support a second-degree murder conviction, although a jury could infer intent or malice. *Cf. State v. Jensen,* 197 Kan. 427, 417 P.2d 273 (1966) ("implied" and "express" malice discussed).

Lastly we find the statement of petitioner's trial counsel concerning his client's understanding of the facts and the law, a statement made when the guilty plea was entered:

"THE COURT:  .  .  .  do you feel that Mr. [Clinkingbeard] knows what he is doing?

"[DEFENSE COUNSEL]: *I believe Melvin Clinkingbeard does know,* your Honor—

.  .  .  .

".  .  .  *what he is doing,* and I do and have mentioned throughout these hearings and he does not understand reading and writing but he does comprehend, I am satisfied, *and does know that he did shoot Martin Dewayne Buell, that as a result of that shooting the victim died, and it was through the use of a shotgun as alleged in the Information."* (Emphasis added.)

We find this statement insufficient either to show a factual basis for the plea or to prove a knowing and voluntary guilty plea.

On the record before us, we are compelled to find petitioner's guilty plea was not knowingly made. The denial of relief to petitioner is reversed. The case is remanded to the trial court with direction to set aside the conviction and sentencing, to allow withdrawal of the guilty plea, and for further proceedings consonant with that action.