No. 89,268

STATE OF KANSAS, *Appellee,* v. FRANCISCO
SANCHEZ-CAZARES, *Appellant.*
(78 P.3d 55)

Opinion filed
October 24, 2003.

*Adebayo Ogunmeno,* of Law Offices of Henry O. Boaten, P.A., of Topeka, argued the cause, and *Henry O. Boaten,* of the same firm, was with him on the brief for appellant.

*Robert D. Hecht*, district attorney, argued the cause, and *Deborah L. Hughes*, assistant district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Francisco Sanchez-Cazares appeals the district court's denial of his motion to withdraw his guilty pleas and to set aside convictions for two counts of first-degree premeditated murder and three counts of aggravated battery. He raises three issues:

1. Whether the pleas were knowingly and voluntarily made;
2. Whether the pleas were the result of ineffective assistance of counsel;
3. Whether the pleas to the murder charges were supported by evidence sufficient to establish premeditation.

Our jurisdiction is under K.S.A. 22-3601(b)(1), conviction of an off-grid crime, and we affirm.

## FACTS

On September 16, 2001, a shooting occurred at a baptismal party on Kansas Avenue in Topeka which left two people dead and three injured. Witnesses informed the police that a Hispanic male with an assault rifle had approached, shot two men as they left the building, and then fled in a 1980's model Chevrolet Camaro or Pontiac Trans Am. Several witnesses identified Francisco Sanchez-Cazares as the gunman and the decedents as Billy Hester and Ralph Mingee.

The following morning, Topeka police contacted Sanchez-Cazares at his home. After receiving *Miranda* warnings in both English and Spanish, he admitted to the shooting. He stated he had been angry that the two men had arrived at the party drunk and danced disrespectfully with the women. He admitted that he drove his car around to the front of the building, retrieved his SKS semiautomatic assault rifle from the trunk, and fired approximately 10 shots toward the two men, killing them and injuring three other partygoers who were still inside. Afterwards, he entered the passenger side of his car and fled the scene. He then gave his assault rifle and ammunition to a friend, who locked the items in his garage.

The State charged Sanchez-Cazares with two counts of premeditated murder and three counts of aggravated battery. He initially pled guilty to the counts as charged on October 18, 2001. Approximately 1 month later, however, he filed a motion to withdraw his guilty plea before sentencing and alleged, among other things, ineffective assistance of counsel and denial of due process. Following a hearing, the district court denied the motion. On March 7, 2002, the court sentenced him to two concurrent life sentences for the premeditated murder charges. For the aggravated battery charges, the court sentenced him to an additional 82 months, 41 months each on two of the counts, with those sentences to run consecutive to the life sentences, and 12 months on the third count, with that sentence to run concurrent with the other two aggravated battery sentences.

ANALYSIS

Issue 1: *Were Sanchez-Cazares' guilty pleas knowingly and voluntarily made?*

Sanchez-Cazares claims that the district court erred when it denied his motion to withdraw his guilty pleas for several reasons. First, he argues the pleas were not knowing because he did not comprehend the English language well enough to understand the terms "premeditation" and "intentionally." Second, he argues the guilty pleas were not voluntary because his attorneys told him that he would make the judge angry if he did not sign the plea agreement.

We begin our analysis by examining K.S.A. 2002 Supp. 22-3210, which governs pleas. It provides:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea.

. . . .

"(d) A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

We have stated that when a district court evaluates a motion to withdraw a plea under this statute, it should consider whether: "(1) the defendant was represented by competent counsel, (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) the plea was fairly and understandingly made." *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 (2001). When we review the district court's decision, we apply an abuse of discretion standard. K.S.A. 2002 Supp. 22-3210(d). Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion. 270 Kan. at 545-46.

Now that the analytical framework has been established, we examine Sanchez-Cazares' specific claims. His argument that he did not speak or comprehend English well enough to understand the meanings of "premeditated" and "intentionally" is disingenuous because it fails to consider the impact of his own testimony and his personal interpreter's testimony. The court assigned Richard Jones to work with Sanchez-Cazares' lawyers as his personal Spanish interpreter. Jones, who is also an attorney, has served as criminal defense counsel for Spanish-speaking defendants in both the Shawnee County and federal courts. Jones testified that although Sanchez-Cazares had questions regarding the meaning of premeditation, there were no questions pending at the time of his plea. Jones believed that Sanchez-Cazares' attorneys had properly advised Sanchez-Cazares of the meaning of premeditation, and that Sanchez-Cazares understood the meaning of premeditation at the time of his plea. Jones further testified that he would have intervened if Sanchez-Cazares' attorneys had improperly advised Sanchez-Cazares regarding the term premeditation.

Regarding Sanchez-Cazares' understanding of the meaning of intentional, Jones testified that Sanchez-Cazares constantly raised

questions about his intent to shoot the three partygoers who were injured because he did not intend to shoot them. Jones, however, noted that Sanchez-Cazares' attorneys used an analogy to help Sanchez-Cazares understand the legal concept of transferred intent as it applied to the three counts of aggravated battery.

While Sanchez-Cazares testified through an interpreter at the hearing on the motion to withdraw his plea, he also testified in English without the aid of an interpreter during the same hearing. He testified that he told his attorneys when he did not understand something. He admitted that the word "intentional" was explained to him, but he simply refused to accept his attorneys' explanation for the term. He also demonstrated his willingness to ask questions when he asked the judge what "intentional" meant at the plea hearing.

Essentially, Sanchez-Cazares' complaints about the terms "premeditated" and "intentionally" demonstrate his disagreement with the legal meanings for the words. According to Sanchez-Cazares' attorney, Jason King, his client believed that he did not commit premeditated murder because he did not sit at home and plan to kill the two men. King testified that Sanchez-Cazares understood the meaning of premeditation but disagreed that his actions constituted premeditation. Likewise, Sanchez-Cazares did not believe that he committed intentional aggravated battery on the three injured people because he did not intend to harm them directly. Nevertheless, Sanchez-Cazares' lack of agreement with the legal meanings of the words does not equate to a lack of understanding about their meanings and does not support the withdrawal of his guilty plea.

Sanchez-Cazares relies on *Clinkingbeard v. State*, 6 Kan. App. 2d 716, 634 P.2d 159 (1981), to support his argument that his plea should be set aside because of his lack of understanding. *Clinkingbeard*, however, can be easily distinguished on its facts. There, the defendant pled guilty to second-degree murder for killing his stepson. The only evidence before the court was Clinkingbeard's affidavit, which claimed that he was trying to remove the shells from the gun before his stepson found it and shot someone with it. It stated that his stepson grabbed the barrel of the gun, which dis-

charged while Clinkingbeard was pushed backwards. Clinkingbeard believed that the gun would not fire because the safety was on. Finding no strong evidence of the intent necessary to support a second-degree murder conviction, the court determined that his plea was not knowingly made and granted his K.S.A. 60-1507 motion. 6 Kan. App. 2d at 719-20. At his plea hearing, he stated that he did not shoot his stepson on purpose. The *Clinkingbeard* court found this statement to be an attempt to deny any intention to shoot his stepson. 6 Kan. App. 2d at 718.

The facts in the instant case are much different. Sanchez-Cazares admitted to retrieving his assault rifle from the trunk of his car, driving to the front of the building, shooting complete strangers because they were dancing rudely with women at a party, and fleeing the scene after the shooting. Unlike *Clinkingbeard*, there are no facts that might indicate an accidental shooting.

Sanchez-Cazares also claims that his guilty pleas were not voluntary because his counsel told him that he would make the judge angry if he did not complete the plea. Although this testimony was not rebutted by testimony from his attorneys, his claim overlooks his statements to the court on the date of his plea. Before accepting his plea, the court specifically asked him if anyone had forced or threatened him in order to cause him to plead guilty. To make certain that he was acting voluntarily, the court again asked him if he were "entering this plea freely and voluntarily." Based on his responses, the court determined that his plea was voluntary. To make this determination, the district court had to evaluate the credibility of his testimony regarding the voluntariness of his plea. We do not review the credibility of a witness on appeal. See *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000). Accordingly, this argument is without merit.

A reasonable person could have found under these facts that Sanchez-Cazares was represented by competent counsel, that he was not misled, coerced, mistreated, or unfairly taken advantage of, and that the plea was fairly and understandingly made. See *Bey*, 270 Kan. at 545. In short, the district court did not abuse its discretion when it determined that Sanchez-Cazares entered knowing

and voluntary pleas of guilty to two counts of premeditated first-degree murder and three counts of aggravated battery.

*Issue 2: Were Sanchez-Cazares' guilty pleas the result of ineffective assistance of counsel?*

In an argument closely related to his first, Sanchez-Cazares next claims that the district court should have allowed withdrawal of his guilty plea because he did not have effective assistance of counsel. As stated previously, the decision to allow the withdrawal of a plea is reviewed under an abuse of discretion standard. K.S.A. 2002 Supp. 22-3210(d). However, the underlying issue of ineffective assistance of counsel involves mixed questions of law and fact which are subject to de novo review. *State v. Muriithi*, 273 Kan. 952, 955, 46 P.3d 1145 (2002). In that review, we accept as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court and disregard any conflicting evidence or other inferences that might be drawn therefrom. *State v. Orr*, 262 Kan. 312, 322, 940 P.2d 42 (1997).

We stated additional considerations as part of this review in *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995):

"To set aside a guilty plea because ineffective assistance of counsel has rendered the plea involuntary, the defendant must show that counsel's performance fell below the standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 1985)."

In support of Sanchez-Cazares' claim that his counsel was ineffective, he repeats the points argued in support of his contentions contained in issue 1, *i.e.*, that they did not adequately advise him of the meanings of "premeditation" and "intentional" and, accordingly, the factual basis for the charges those terms define. Also as before, he argues that his attorneys coerced him into accepting the plea agreement to avoid angering the judge. As previously noted, we find no error in the explanation given by Sanchez-Cazares' attorneys for the words "premeditated" and "intentional" and no coercion to accept the plea agreement. Likewise, we find no error in their advice regarding the factual basis for the charges. Accord-

ingly, he has failed to establish the first of two required elements cited in *State v. Solomon*, 257 Kan. at 223 — his counsel's performance fell below the standard of reasonableness.

Sanchez-Cazares also fails to establish *Solomon's* second required element — that there was a reasonable probability that, but for counsel's errors, he would not have entered the plea and would have insisted on going to trial. While he does argue that he would have proceeded to trial because he probably would have been convicted of a lesser degree of murder, this overlooks the risks associated with trial. Because he killed two people as part of the same act, the State could have charged him with capital murder pursuant to K.S.A. 21-3439(a)(6), which may be punished by the death penalty. See K.S.A. 21-4624. Given the potential for the death penalty and given the substantial evidence against him — numerous eyewitnesses plus a *Mirandized* confession in which he admitted that he became angry at the two men who crashed the party, left and retrieved his assault rifle, shot the men numerous times as they were already leaving the party, and then fled and concealed the murder weapon — trial would have contained considerable risk. Under these facts, a reasonable person could have concluded Sanchez-Cazares would not have insisted on going to trial.

The district court did not abuse its discretion when it denied his motion to withdraw his guilty pleas based upon ineffective assistance of counsel.

Issue 3: *Does sufficient evidence exist to support a conviction for premeditated murder?*

Finally, Sanchez-Cazares argues that the district court should have allowed the withdrawal of his guilty pleas because there was not a factual basis to support premeditation. Once again, our standard of review is abuse of discretion. See K.S.A. 2002 Supp. 22-3210(a)(4), (d); *State v. Bey*, 270 Kan. 544, 550, 17 P.3d 322 (2001).

As we stated in *State v. Saleem*, 267 Kan. 100, 104, 977 P.2d 921 (1999): " '[P]remeditation is the process of simply thinking about a proposed killing before engaging in the homicidal conduct.' " While premeditation may be established by circumstantial

evidence, it may not be inferred merely by the use of a deadly weapon alone.

" 'Circumstances which may give rise to the inference of premeditation include: (1) the nature of the weapon used; (2) lack of provocation; (3) the defendant's conduct before and after the killing; (4) threats and declarations of the defendant before and during the occurrence; and (5) the dealing of lethal blows after the deceased was felled and rendered helpless.' " *State v. Murillo*, 269 Kan. 281, 286, 7 P.3d 264 (2000).

Sanchez does not dispute that his use of an SKS semiautomatic assault rifle implicates his premeditation to kill. He claims instead that none of the remaining factors cited in *Murillo* is present. We disagree.

Premeditation may be inferred by lack of provocation, and the victims did not provoke Sanchez-Cazares to shoot them. Although the decedents' behavior may have been rude and inappropriate, it was not directed at Sanchez-Cazares and certainly did not warrant deadly force. In fact, the decedents were no longer dancing with the women and had left the building when they were shot.

Premeditation may also be inferred by a defendant's behavior before and after the killings. Contrary to his claim that he only intended to scare the victims into leaving the party by showing them a weapon, he actually shot them after they had left the building — without speaking to them or first showing them his rifle. Prior to the shooting, he prepared to kill the victims by soliciting the assistance of a getaway driver and staging his car in front of the building to aid in his escape. After the shooting, he immediately fled and later hid his rifle and ammunition in a friend's garage.

Concerning the factor of threats and declarations of the defendant before and after the killing, there is no evidence Sanchez-Cazares made any statements to the victims at any time. Likewise, there is no direct evidence that he dealt lethal blows after the victims were felled and helpless. Nevertheless, he admitted to the police that he shot the victims several times, indicating an intent to kill rather than wound or scare. Additionally, the police recovered approximately 10 rifle shell casings at the scene.

The evidence is clearly sufficient to establish premeditation. The district court did not abuse its discretion when it found a factual

basis for Sanchez-Cazares' guilty plea to two counts of premeditated first-degree murder.

Affirmed.

ABBOTT and LUCKERT, JJ., not participating

LARSON, S.J., and BRAZIL, S.J., assigned