No. 94,857

STATE OF KANSAS, *Appellee*, v. TIELLER M. ADAMS, *Appellant*.

(158 P.3d 977)

Opinion filed June 8, 2007.

*Michael C. Brown,* of Mulvane, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Tieller M. Adams appeals his conviction for felony murder, claiming (1) the district court abused its discretion when it concluded Adams failed to establish good cause to permit withdrawal of his nolo contendere plea prior to sentencing, (2) there was an insufficient factual basis presented by the State to establish the offense of felony murder, and (3) his plea was the product of ineffective assistance of counsel due to the existence of an attorney/client conflict of interest.

In May 2004, defendant Tieller M. Adams was charged with premeditated first-degree murder of Chelando Dion Randolph. In exchange for the defendant's plea to the charge, the State agreed to recommend a life sentence. On November 30, 2004, Adams entered a plea of no contest to an amended charge of felony murder.

At the plea hearing, the State's attorney summarized what evidence would be introduced if a trial were held. The factual basis established that Adams shot and killed Randolph on May 12, 2004. On that date, Wichita police officers were dispatched to an apart-

ment because of reports of gunshots in the residence. When the officers entered the apartment, they found Randolph, who was dead, lying on the floor of the kitchen, hunched over a trash can, with three gunshot wounds to the head. Four spent shell casings of unknown caliber were found in the kitchen and living room of the apartment. An autopsy determined the death to be a homicide.

If the defendant had gone to trial, the State's witnesses, including Season Micheaux and Jeffrey Hayes, were prepared to testify that Adams visited their apartment, which was near Randolph's apartment, the day Randolph was shot. According to the witnesses, Adams was waving a gun and saying he was going to "get Randolph". Micheaux would testify that Adams left her apartment and she then heard Adams and Randolph arguing. She heard a gunshot, then Randolph screaming, and then heard several more gunshots. Hayes would testify to the same events.

The State indicated that its DNA evidence would establish that Randolph's blood was found on Adams' shoes. The evidence would further show that Adams was angry and wanted to speak to Randolph because he wanted to get drug transaction money from Randolph. The district judge found a factual basis existed for the plea and accepted Adams' plea of no contest to felony murder.

Prior to sentencing, Adams filed a motion to withdraw his plea. Adams claimed his plea was not knowingly and voluntarily entered because: (1) his appointed counsel did not spend adequate time discussing the case with him; (2) counsel failed to keep him advised of scheduled court hearings; (3) counsel did not explain the meaning of premeditated murder or felony murder; (4) counsel provided no explanation as to why he should enter a plea rather than go to trial; (5) counsel failed to review with him the evidence the State relied on to establish his guilt at trial; (6) counsel neglected to provide him with copies of reports, statements, and other pertinent documentary evidence; (7) counsel had informed him that a plea was his only option; therefore, he had failed to read the plea form; (8) counsel cautioned Adams not to ask questions at the plea hearing because that would make the judge angry; and (9) although counsel had advised him she had a conflict of interest, counsel failed to present sufficient information to enable him to waive the

conflict of interest intelligently. Adams asserted he did not understand the events that transpired at his plea hearing, and he had followed the advice of counsel and refrained from asking questions of the court. The district court scheduled an evidentiary hearing and appointed alternative defense counsel to represent Adams on the motion to withdraw plea.

At the hearing, Adams testified he was represented by Julia Craft from the time of his arrest until he entered a plea of no contest to felony murder. Adams stated he was 24 years old and had 11 years of school at the time of his plea. Adams was incarcerated during the entire case. He claimed that prior to entering his plea Craft visited him only four or five times to discuss the case. In addition, Craft failed to keep him informed of court dates and failed to visit him until just prior to entering his plea. Adams stated Craft did not fully explain to him the nature of the charge against him or the consequence of a plea. He further stated Craft failed to explain the difference between premeditated first-degree murder and felony murder and, at the time of the plea, he was still unaware of the difference between the two charges. Adams stated he had never received a police report or statements of the two witnesses. He testified that when he discussed the plea agreement with Craft, she informed him that because there was no other way to defend him, she was not going to leave until he signed the plea agreement.

Adams further stated that Craft did not explain the document she gave to him, and he had not read the defendant's acknowledgment of rights and entry of plea document before he signed it. In addition, Craft failed to instruct him as to how to answer the court's questions at the plea hearing. Instead, because it might get him into trouble with the judge, Craft told Adams not to say anything at his plea hearing. Adams said that Craft informed him she had a conflict of interest in representing him but never stated what the conflict of interest was. He alleged he did not understand what was going on when he entered his plea. Adams asserted that if he had been properly informed of the conflict by his appointed attorney he would not have entered a plea but instead would have gone to trial.

The State then called as witnesses the defendant's former trial counsel and her private investigator to testify as to the events giving rise to defendant's plea and trial counsel's alleged conflict of interest. Craft explained her conflict of interest was that she had previously represented the State's complaining witness, the detective, in a civil family law matter. She stated that after she was appointed to represent the defendant she contacted the detective and the district attorney to determine if they had any objections to her representation of the defendant. Craft stated that she then spoke to Adams and his mother about the nature of the conflict. After all had orally waived any conflict of interest, she accepted the appointment.

Craft testified that from sometime in June 2004 until the plea in November 2004, she visited Adams approximately 10 times while he was in custody, The jail visitation record indicated Craft visited Adams eight times in addition to the scheduled preliminary hearings and when defendant entered his plea.

Craft acknowledged she did not provide Adams with *all* of the evidentiary reports she had obtained, but she had given copies of many of them to Adams. Craft testified that prior to Adams' plea she had reviewed the substance of all of the relevant evidence with Adams. In addition, Craft discussed the plea negotiations with Adams and reviewed the sentencing grid with her client on more than one occasion. Craft stated she had paraphrased the acknowledgment of rights form to Adams and believed Adams understood his rights, the plea, and what sentence would be imposed if he pled guilty.

Gary Eaves, the licensed private investigator who worked for Craft, also testified at the hearing. Eaves stated he had attempted to conduct interviews with witnesses provided to him by Adams. Eaves said that because none of the witnesses would discuss the incident with him or get involved, he was unsuccessful in building a defense for defendant.

The judge observed that Adams had a fair understanding of the original charge, the amended charge, and the sentences for each offense. The district judge determined that appointed counsel had provided competent representation to the defendant and that Ad-

ams had not been misled or unfairly taken advantage of. The district judge found no good cause to warrant withdrawal of Adams' plea and denied the defendant's motion to withdraw his plea. Adams was sentenced to life without the possibility of parole for 20 years. He now brings this appeal.

*Adams' Plea*

Adams first argues his plea of no contest to felony murder was not knowingly, fairly, and voluntarily entered because he was misled and coerced into entering the plea by his court-appointed attorney. Our question is: Did the sentencing judge abuse his discretion by concluding defendant failed to establish good cause to withdraw his nolo contendere plea prior to sentencing?

A trial court's decision to deny a motion to withdraw a plea will not be disturbed absent a showing that the court abused its discretion.

"The defendant bears the burden of establishing such an abuse of discretion. Judicial discretion will vary depending upon the character of the question presented for determination. Generally, the trial court's decision is protected if reasonable persons could differ upon the propriety of the decision as long as the discretionary decision is made within and takes into account the applicable legal standards. [A]n abuse of discretion may be found if the trial court's decision goes outside the framework of or fails to properly consider statutory limitations or legal standards." *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006).

Adams asserts he demonstrated good cause to allow withdrawal of his plea.

In *State v. Sanchez-Cazares*, 276 Kan. 451, 78 P.3d 55 (2003), this court noted the statutory factors a district judge should consider when evaluating a defendant's motion to withdraw a plea. Pursuant to K.S.A. 22-3210, the district judge must consider whether: (1) the defendant was represented by competent counsel; (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) the plea was fairly and understandingly made. 276 Kan. at 454.

Adams first argues his plea was not freely, knowingly, and voluntarily made because he did not understand the difference between premeditated first-degree murder and felony murder. We note that the record reflects that Adams was properly advised by

his attorney and the sentencing judge as to the difference between the charges. In addition, at the hearing on the motion to withdraw his plea, Adams admitted he had been given a copy of the sentencing grid but claimed that Craft had not explained the grid to him.

Craft testified she had discussed the sentencing grid with Adams on more than one occasion. She had used the grid to explain to Adams the sentencing range for the offenses and to calculate Adams' parole eligibility for both offenses. At the conclusion of their meeting, Craft attempted to give Adams a copy of the grid. Her notes of the meeting indicated he refused to accept the copy. Craft testified that Adams indicated to her that he understood the negotiations with the State "based upon the numbers that we were talking about." Craft then introduced into evidence a copy of the sentencing grid which bore calculations indicating a discussion had occurred as to the judge's sentencing options.

Private investigator Eaves corroborated Craft's testimony. Eaves testified that when he accompanied Craft to the jail to meet with Adams, Craft had discussed the possibility of pleas and reviewed the sentencing grid and the potential sentences with Adams. Eaves specifically recalled that the meeting on November 24, 2004, was a lengthy one. During that meeting, Craft again reviewed the grid with Adams and repeated the sentencing calculations. Eaves stated that Adams understood his options, and Adams had stated several times he would be an old man by the time he got out of jail if he received a life sentence without the possibility of parole for 20 years. Eaves testified Adams understood that he was facing the possibility of a greater penalty if the case went to trial.

Finally, as noted by the district judge in ruling to deny Adams' motion to withdraw his plea, the plea hearing transcript reflects an exchange between Adams and the judge in which Adams responded in the affirmative when the judge inquired as to whether Adams understood that the possible sentence for felony murder consisted of life without the possibility of parole for 20 years, as opposed to a hard 25 or possible hard 50 that could be imposed for a conviction of premeditated first-degree murder. The record also reflects a substantial effort was made by the district judge to

ensure Adams, prior to entering a plea, was fully advised of all possible convictions and sentences. Based on that record, we find the district judge did not abuse his discretion when determining Adams understood the charges and the possible sentences that could be imposed.

Next, Adams argues his plea should have been withdrawn because he was "kept in the dark" as to evidence and the option of a trial. A review of Adams' testimony at the plea hearing reflects that Craft had provided information about the State's evidence for Adams to review. Adams testified that Craft provided him with "affidavits and things" and had requested that Adams' family bring reading glasses to the jail so that Adams could read the paperwork. Adams acknowledged he read the witness statements of the State's primary witnesses, Micheaux and Hayes. He stated he had waived his preliminary hearing as a legal strategy because his counsel had said Micheaux and Hayes might prove to be problematic witnesses for the State and, if those witnesses failed to appear for trial, the State could not introduce their testimony from a preliminary hearing into the trial. Adams recalled a judge had set his trial date the day he waived his preliminary hearing. The case was subsequently continued a few times, which Adams understood to be normal. Finally, Adams testified he was aware Craft had hired Eaves to handle the investigatory aspect of his case. Adams remembered that Eaves had informed him he had attempted to contact the individuals suggested by Adams but had been unsuccessful in his attempts.

Craft testified she had compiled two large trial notebooks for the case and had reviewed those notebooks in their entirety with Adams. In addition, Craft had provided Adams with copies of witness statements, transcripts of taped statements, law enforcement reports, a copy of the detective's personal recollection of his interview with Hayes, Earline Gibson's statement to police, Adams' statement to police, and a copy of the DNA report. Craft acknowledged she had not provided Adams with reports that were not relevant or were duplicitous. Craft stated she had no recollection of Adams requesting additional materials.

Craft testified she believed Adams had a firm understanding of the proceedings. She further stated she has never instructed any defendant not to ask a question at a plea hearing on grounds it would make the judge angry. Craft stated she had met with Adams on approximately 8 to 10 separate occasions. When Adams opted to enter a plea, he did so with a sufficient understanding of the benefits and risks of a trial and the benefits and risks of a plea. We also note that, at the plea hearing, Adams assured the judge that he was entering a plea on his own volition and that his decision was not the product of threats, intimidation, or coercion.

After reviewing the record, we find the district judge properly exercised his discretion in denying Adams' motion to withdraw his plea. Adams' plea was freely, knowingly, and voluntarily made.

*Insufficient factual basis to establish the offense of felony murder*

Adams next argues there was not a sufficient factual basis for the district judge to accept his plea. K.S.A. 2006 Supp. 22-3210(a)(4) authorizes the district judge to accept a plea when, among other requirements, "the court is satisfied that there is a factual basis for the plea." In determining whether a plea is supported by a factual basis, the district judge must establish that all elements of the crime charged are present. See *State v. Green*, 283 Kan. 531, 546-47, 153 P.3d 1216 (2007); *State v. Bey*, 270 Kan. 544, 546, 17 P.3d 322 (2001).

In *State v. Shaw*, 259 Kan. 3, 910 P.2d 809 (1996), this court noted that the requirement of a factual basis for a plea may be satisfied by a complaint or information given or read to the defendant which sets forth the factual details and essential elements of the particular crime charged, by evidence presented to the court by the prosecutor, by a statement of the facts made by the defendant at the hearing, or if the judge accepting the defendant's plea conducted the defendant's preliminary examination. 259 Kan. at 10-11.

Adams asserts the State failed to establish either that a taking occurred to support the underlying felony of attempted aggravated robbery or aggravated robbery, or that Adams entered the victim's home with the intent to steal or intent to commit a felony. A review

of the factual basis in the record of the plea demonstrates the State's evidence would show that, on the evening in question, Adams was seen immediately before the crime occurred angrily waving a gun and stating he intended to go get the victim and obtain money from a drug transaction. A short time later, Adams was heard arguing with the victim, followed by several gunshots. The victim was found murdered shortly thereafter. In addition, the State indicated it would present evidence at trial that Adams went to the victim's apartment armed with a loaded weapon and had the intention of taking money from the victim by use of force. We find that the district judge properly concluded a sufficient factual basis was presented to establish the underlying felony for felony murder.

*Ineffective Assistance of Counsel*

Adams next argues his plea was the product of ineffective assistance of counsel because: (1) counsel met with him only 4 or 5 times; (2) counsel would not entertain the idea of going to trial; (3) counsel failed to provide all reports to him; and (4) counsel had a conflict of interest by virtue of her previous representation of the police officer who was the complaining witness.

A two-step test applies when determining whether to set aside a guilty plea because of ineffective assistance of counsel. As the first step, defendant must show that counsel's performance fell below the standard of reasonableness. In the second step, defendant must show that a reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial. *State v. Muriithi*, 273 Kan. 952, 956, 46 P.3d 1145 (2002) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 [1985]). A claim alleging ineffective assistance of counsel presents mixed questions of fact and law requiring de novo review. *State v. Mathis*, 281 Kan. 99, 110, 130 P.3d 14 (2006).

The first three allegations have been addressed previously. As to those allegations, we find the record fails to support Adams' contention that he received ineffective assistance of counsel. To the contrary, the record indicates his defense attorney provided competent representation to Adams.

*Conflict of Interest*

The remaining issue is Adams' contention that his attorney, Craft, had a conflict of interest that should have allowed him to withdraw his plea.

Prior to undertaking any duties, Craft reviewed her files and discovered a potential conflict of interest. Craft had represented the detective, who was the State's complaining witness, in a prior civil family law matter. Craft promptly notified her former client, the detective, and the State's attorney to ensure they had no objections to her continued representation of Adams. When Craft first met with Adams, she advised him of the conflict and requested Adams to inform her if he was "at all uncomfortable" with her representation. Craft also explained the conflict to Adams' mother. All parties orally waived any conflict before Craft continued her representation of Adams.

The current Kansas Rules of Professional Conduct (KRPC) governing an attorney's actions upon discovering a conflict of interest are KRPC 1.7 (2006 Kan. Ct. R. Annot. 411) and KRPC 1.9 (2006 Kan. Ct. R. Annot. 421). Rule. 1.7 states:

"(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." 2006 Kan. Ct. R. Annot. 411-12.

Rule 1.9 states:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known." 2006 Kan. Ct. R. Annot. 421.

Craft followed KRPC 1.7 and KRPC 1.9 and notified all of the parties as to the possible conflict. After receiving their oral consent, Craft continued to represent Adams. Craft did not err in continuing her representation of Adams.

We note that in *State v. Wallace*, 258 Kan. 639, 908 P.2d 1267 (1995), Dennis Wallace was charged with first-degree murder, aggravated robbery, and aggravated kidnapping. Mark Ward was appointed to represent Wallace. Because of the death of the county attorney, a deputy attorney general represented the State during the later stages of the proceeding.

Wallace entered an *Alford* plea to reduced charges of second-degree murder and aggravated robbery on November 30, 1992, the day before trial was to commence. There was no written plea agreement. After the district judge accepted Wallace's plea, the State and defense counsel informed the judge there was no agreement concerning the sentence to be imposed. Sentencing occurred on January 22, 1993. The State requested imposition of consecutive maximum sentences. Wallace received consecutive maximum sentences of 15 years to life for the offenses. Wallace filed a motion to modify his sentence 5 days later. The aggravated robbery sentence was modified downward to 10 to 20 years but remained consecutive to the 15-years-to-life sentence for second-degree murder.

Six months after the sentence was modified, Wallace filed a pro se motion to withdraw his plea. At the hearing to set aside his plea, Wallace set forth two arguments. First, he argued his court-appointed counsel, Mark Ward, misled him as to the sentence the judge would impose. Second, Wallace complained that his Sixth Amendment right to effective assistance of counsel was violated because his appointed counsel had a conflict of interest because, at the time counsel was defending him for the Bourbon County

crime, he was also serving as a special prosecutor for Bourbon County. Wallace then asserted that when the fundamental constitutional right to effective counsel is violated, the trial court has no discretion and is required to allow a defendant to withdraw a plea. 258 Kan. at 640-41.

Wallace further testified at the hearing on his motion to withdraw his plea that his defense counsel, Ward, promised that he was to receive two 10- to 20-year sentences. According to Wallace, Ward informed him the judge had stated that if the press was present at Wallace's sentencing, the judge would impose a more severe sentence and later reduce the sentences when the motion for modification of Wallace's sentence was heard. Wallace also testified he understood the State had agreed to stand mute as to the sentence to be imposed by the judge.

Wallace conceded that at the plea hearing he was informed and acknowledged the judge was not bound by any sentencing recommendation. Wallace claimed that even though the State and his counsel informed the judge at the plea hearing that there was no agreement as to the sentence to be imposed, he had been instructed just to stand there because his counsel had the deal worked out prior to the hearing. Wallace asserted he did what his attorney told him to do but did not understand what was occurring at the plea hearing. Ward then testified as a witness for the State. Ward denied he promised Wallace that he would receive two 10- to 20-year sentences or that the judge had agreed to impose a specific sentence at Wallace's sentencing or modification hearing. Ward insisted he explained to Wallace the range of penalties and that the sentencing judge had discretion in imposing the sentence. 258 Kan. at 641. The trial judge found no promises had been made to Wallace by the State or his defense counsel. The judge concluded that Wallace's trial counsel had been effective and that no manifest injustice had occurred, and refused to set aside Wallace's plea.

In his appeal, Wallace additionally asserted that Ward's capacity as a special prosecutor created an inherent conflict of interest which violated Wallace's constitutional right to effective counsel. 258 Kan. at 642.

The *Wallace* court noted that 22-3210(d) permits a trial court to set aside a judgment of conviction and allow a defendant to withdraw his or her plea after sentencing to correct manifest injustice. The decision whether to grant or deny a motion to withdraw a plea lies within the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a showing that the trial court abused that discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. *State v. Davis*, 256 Kan. 1, 26, 883 P.2d 735 (1994).

In reaching its conclusion rejecting Wallace's claims, the *Wallace* court noted that the Bourbon County Attorney was killed during the pendency of Wallace's criminal case. Ward served as a special prosecutor in criminal cases when the county attorney had a conflict of interest and had filed criminal cases for a week or so after the county attorney's death. Ward served as a special prosecutor for Bourbon County while representing Wallace in Bourbon County. Ward could not recall the number of cases he prosecuted when the county attorney had a conflict of interest but testified the majority of the cases on which he was a special prosecutor were misdemeanors, and there may have been one felony case. Ward stated that acting as a special prosecutor in the other criminal cases did not interfere or conflict with his representation of Wallace and that he was prepared for Wallace's trial. Ward believed Wallace was aware he acted as a special prosecutor in other cases while defending Wallace.

At the hearing, Wallace testified he was not informed of Ward's status as a special prosecutor and would not have consented to the appointment of Ward as his defense counsel if he had been aware of the conflict. Wallace argued that whether or not he was aware of the conflict, Ward's status as a special prosecutor was an inherent conflict of interest which compromised Wallace's constitutional and statutory right to effective counsel. 258 Kan. at 642-43.

The *Wallace* court reviewed state and federal cases that did not have the same factual content and concluded it is the duty of the county attorney to appear in any court having jurisdiction within the county and prosecute or defend on behalf of the people all actions and proceedings, civil or criminal, in which the state or the

county is a party or an interested party. K.S.A. 19-702(a). It noted the legislature recognized that in certain situations the county attorney will be unable to perform his or her statutory duties and appointment of temporary county attorneys is necessary. In the absence, sickness, or disability of the county attorney and his or her deputies, any court before which it is the county attorney's duty to appear may appoint an attorney to act as temporary county attorney. K.S.A. 19-711. When a vacancy occurs in the office of county attorney, the district judges of the judicial district in which the county is located appoint a person to serve as temporary county attorney until a person is appointed and qualifies to fill the vacancy under K.S.A. 19-715(a). K.S.A. 19-715(b). A temporary county attorney so appointed has the same powers and duties and is subject to the same qualifications as an elected county attorney. K.S.A. 19-715(c). The *Wallace* court concluded that if Ward was the elected county attorney of Bourbon County or was appointed and qualified to fill the vacancy under K.S.A. 19-715(a), he could not represent individuals charged with violations of state criminal statutes in that county.

The *Wallace* court observed that, as provided by statute, Ward had been appointed by the district court to serve as acting county attorney in specific cases in which the Bourbon County prosecutor had a conflict of interest and to serve as a temporary county attorney after the death of the county attorney. The district judge was aware of Ward's capacity as a special prosecutor while defending an individual charged with a criminal offense. The *Wallace* court concluded that Ward was not a "part-time" county attorney working under the supervision and control of the county attorney when appointed as a temporary county attorney by the district judge. When enacting K.S.A. 19-711 and 19-715(b), the legislature did not intend that an attorney appointed as temporary county attorney would be prohibited from practicing law in the district court while fulfilling the temporary position.

The *Wallace* court acknowledged that the assistance of counsel is a constitutional right so basic to a fair trial that its denial can never be treated as harmless error. A trial judge has an independent duty to ensure that a criminal defendant receives a trial that is

fair and does not contravene the defendant's Sixth Amendment right to effective assistance of counsel. *State v. Jenkins*, 257 Kan. 1074, Syl. ¶ ¶ 1, 2, 898 P.2d 1121 (1995). To set aside a guilty plea on the ground that ineffective assistance of counsel, due to a conflict of interest, has rendered the plea involuntary, a defendant must show there is a reasonable probability that but for counsel's errors he or she would have insisted on going to trial. See *Hill v. Lockhart*, 474 U.S. 52, 58-59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985); *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 407 (1995).

Wallace stated he felt confident about going to trial before the plea because there was no evidence against him. The *Wallace* court noted, however, that Wallace intended to rely on an alibi defense at trial. Shortly before trial, Wallace's alibi witness refused to testify as to the alibi. In addition, Wallace was aware of evidence from a codefendant placing Wallace at the scene of the murder and stating that Wallace was the one who did the shooting. Wallace claimed he felt he could justify pleading guilty for the two 10- to 20-year plea bargained sentences because he had been committing other crimes at that time. The *Wallace* court observed that the evidence did not show that Wallace was promised two 10- to 20-year sentences. It noted that Wallace testified, "I've had a lot of time to think about this, and regardless of whether I could justify two 10 to 20s or not, I would like to have my chance in court to prove that I didn't shoot this man." 258 Kan. at 652. This showed that Wallace had a change of heart after he entered his plea, but it did not show a reasonable probability that but for Ward's alleged conflict of interest Wallace would have insisted on going to trial.

The *Wallace* court concluded the fact that an attorney has been appointed by the district judge as acting and temporary county attorney while defending an individual charged with committing a crime is not a violation of the defendant's constitutional right to the effective assistance of counsel and does not constitute a manifest injustice which requires withdrawal of the defendant's plea. The trial court specifically found that Ward's status as a special prosecutor did not affect his defense of Wallace. Wallace's own testimony is not to the contrary. Under the facts, there was no conflict of interest created by Ward's capacity as a special prose-

cutor, and Ward's assistance as Wallace's trial counsel was not ineffective. The trial court did not abuse its discretion in determining there was no manifest injustice requiring withdrawal of Wallace's plea. 258 Kan. at 652; see *State v. Gleason*, 277 Kan. 624, 649-52, 88 P.3d 218 (2004).

We find nothing in the record that indicates Craft's previous representation of the complaining witness adversely affected her actions with regard to Adams' defense. It cannot be said that no reasonable person would disagree with the manner in which Craft handled this case. Adams has not established that Craft rendered ineffective assistance of counsel or had a conflict of interest that required the court to set aside the defendant's plea. The district court did not abuse its discretion in refusing to allow Adams to withdraw his plea on the basis of ineffective assistance of counsel.

In conclusion, we note Kansas courts expend substantial time and effort resolving whether a defendant waived a potential conflict of interest. With the recent amendments to the Kansas Rules of Professional Conduct (Supreme Court Rule 226), which become effective July 1, 2007, attorneys will be required to confirm in writing a client's informed consent to a waiver of a potential conflict of interest. The new "mantra" under the KRPCs for a waiver of a potential attorney/client conflict of interest thus becomes *"Informed Consent, Confirmed in Writing."*

Affirmed.

ALLEGRUCCI, J., not participating.

LOCKETT, J., Retired, assigned.