No. 94,113

STATE OF KANSAS, *Appellee*, v. STEVE L. MOSES, *Appellant*.

(127 P.3d 330)

Opinion filed February 3, 2006.

*Steve L. Moses*, pro se, was on the brief for appellant.

*Jerome A. Gorman*, district attorney, and *Phil Kline*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: In 2004, 12 years after Steve L. Moses pled guilty to first-degree murder and aggravated robbery, he filed a motion to withdraw his guilty pleas. He alleged that the district court violated K.S.A. 22-3210 (Ensley 1988) when it failed to personally advise him, and establish he understood, that by entering guilty pleas, he would be waiving certain constitutional rights. After the district

court denied the motion, Moses appealed. Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1) (life sentence imposed).

The sole issue on appeal is whether the district court abused its discretion when it denied Moses' motion to withdraw his guilty pleas. We affirm.

## FACTS

The principal facts are not in dispute. In 1992, Moses was charged with first-degree murder and aggravated robbery for the strangulation death of his 81-year-old next door neighbor, Radar Potter. Following a preliminary hearing, Moses was bound over for trial. After the State filed notice of intent to seek the Hard 40 sentence, Moses agreed to plead guilty as charged in exchange for the State dropping its Hard 40 request.

At the November 18, 1992, plea hearing, the trial court read the information aloud to Moses and then asked him to tell the court what he had done. Moses explained that while he was high on drugs, he went next door to Potter's house to use her phone. When the person he was trying to call did not answer the phone he got mad, grabbed Potter, and strangled her for about 30 minutes until she finally quit breathing. He then took a radio from her house and drove off in her car.

The court asked the State to provide an additional factual basis. The State replied that Moses' common-law wife testified at the preliminary hearing that he admitted to her that he had killed the old lady next door. It also informed the court that another witness — the sister of his common-law wife — testified that she had heard Moses make statements that he saw the old lady next door with some money and he ought to hit her in the head and get her money. The State further said that blood was found on the shoes Moses was wearing at the time, and the victim had bled from her nose. The State additionally told the court that in Moses' statement to police, he said he had done something bad. The State also proffered that the autopsy showed Ms. Potter's death was due to strangulation.

When the court asked Moses if he disputed that the State would present that evidence, he replied, "[I]f I did go to court with it I probably would lose it. I would lose the case."

There was then a lengthy discussion about whether Moses understood the penalty he faced in the event the court accepted his guilty pleas.

The court then noted that a petition to enter a plea of guilty had been signed by Moses, his legal counsel, and the prosecutor. Paragraphs 7 and 8 of the petition contain the following acknowledgments:

"7. I know that I have the right to plead 'Not Guilty' to any offense charged against me. If I plead 'Not Guilty,' I know the Constitution guarantees me:

"A. The right to a speedy and public trial by a jury.

"B. At that trial, and at all stages of the proceedings, the right to the assistance of a lawyer.

"C. The right to see and hear all witnesses called to testify against me, and the right to cross-examine those witnesses.

"D. The right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses in my favor.

"E. The right not to be compelled to incriminate myself by not taking the witness stand, and if I do not take the witness stand, no inference of guilt may be drawn from such failure.

"F. If I am convicted, I have the right to appeal to the Supreme Court of Kansas and that if I do not have the funds, the court will appoint an attorney for me and pay the costs of such appeal.

"8. *I know that if I plead 'Guilty,' I am thereby waiving all of the above rights* and that there will be no further trial of any kind, either before the court or jury; and further, I realize the court may impose the same punishment as if I had pleaded 'Not Guilty,' stood trial, and been convicted by a jury." (Emphasis added.)

Before the court accepted Moses' plea, the following colloquy occurred between the court and Moses:

"THE COURT: I think the record should reflect the petition to enter a plea of guilty has been signed by the defendant, defense counsel and also the district attorney. Mr. Moses, did you have a chance to go over this with Mr. Duma [defense counsel] before you signed it?

"THE DEFENDANT: Yes, sir.

"THE COURT: Is there anything in this document now that you don't understand or that you got a question on?

"THE DEFENDANT: No, sir.

"THE COURT: You understand the contents of it?

"THE DEFENDANT: Yes.

"THE COURT: Is it your intent this afternoon to plead guilty to these counts I've asked you about?

"THE DEFENDANT: Yes.

"THE COURT: *And in pleading guilty you understand all of the circumstances that could happen to you?*

"THE DEFENDANT: Yes.

"THE COURT: But it is still your desire to plead guilty because you are guilty?

"THE DEFENDANT: Yes.

"THE COURT: And what you told me is the truth of what happened?

"THE DEFENDANT: Yes." (Emphasis added.)

The judge then accepted the plea, stating, "I'm going to consider it freely and voluntarily made." On January 29, 1993, Moses was sentenced to life imprisonment on the first-degree murder conviction and 15 years to life on the aggravated robbery conviction. The sentences were ordered to run consecutive to each other and consecutive to sentences imposed in Case Nos. 83-002 and 83-011 by the State of Arkansas on June 3, 1983, for which Moses had been on parole at the time of Potter's death. The plea hearing was transcribed on October 29, 1993.

In 1993, Moses filed a K.S.A. 60-1507 motion which alleged ineffective assistance of counsel, involuntary plea, and illegal sentence. Counsel was appointed to represent him, the district court held a hearing, and the motion was denied by a journal entry filed April 7, 1994. In 2001, Moses submitted a motion to the district court for leave to file an out of time notice of appeal from denial of his 1507 motion. The court denied the motion, holding it did not support a finding of good cause for the untimely appeal. Moses then filed a motion to alter or amend, claiming he requested his attorney file a notice of appeal of the denial of his 1507 motion and that he had only recently learned his case was not currently on appeal, as was requested in 1994. This motion was also denied. He appealed the denial of his motion to file a notice of appeal out of time and the denial of his motion to alter or amend. These documents are not contained in the record on appeal, but the recited facts are taken from *Moses v. State,* No. 87,794, unpublished opinion filed August 30, 2002, where the Court of Appeals affirmed the district court.

While Moses' 1507 issues awaited resolution, on May 29, 2001, he also filed with the district court a motion to correct an illegal

sentence under K.S.A. 22-3504. He specifically alleged that convictions of both felony murder and the underlying felony violate the Double Jeopardy Clause of the United States and Kansas Constitutions as well as K.S.A. 21-3107(2)(b), which preclude punishment of a lesser included crime where all elements of the lesser crime are identical to some of the elements of the crime charged. After the district court denied his motion, this court affirmed in *State v. Moses*, No. 87,855, unpublished opinion filed October 25, 2002. During the pendency of the appeal, on October 10, 2001, his appellate attorney ordered the transcript of the 1992 plea hearing.

On June 25, 2004, approximately 2 years after this court's opinion was filed in *State v. Moses*, approximately 2 years after the Court of Appeals' opinion was filed in *Moses v. State*, and 12 years after Moses' guilty pleas, he filed a pro se motion to withdraw his pleas. Counsel was appointed for him, and that attorney filed another motion to set aside the pleas.

On December 15, 2004, a hearing was held on the motion, and Moses was present. No testimony was presented, and the only exhibit was the transcript of the 1992 plea hearing.

Moses' counsel argued that the trial court had failed to comply with K.S.A. 22-3210 in 1992 because Moses had not been advised of the rights he would be waiving by entering guilty pleas. The State responded that although the court had not orally advised Moses of the rights he would be waiving, the record in its entirety, including the signed plea petition, demonstrated that his pleas were knowingly and voluntarily made.

The State also asserted that the doctrine of laches barred relief. It argued the unexplained 12-year delay was unreasonable and that the State would suffer prejudice if it was forced to take the case to trial after so much time had passed, as it would be difficult to locate witnesses. The State informed the court that it had tried to find the victim's sister but was unable to locate her at the phone number and address it had for her. The State additionally said it did not know the whereabouts of several of the law enforcement witnesses, and the arresting officer had subsequently been convicted of voluntary manslaughter and would likely be a hostile witness.

The State also argued that the motion to withdraw plea was, in effect, a successive motion barred under K.S.A. 60-1507(c), as Moses' 1507 motion in 1993 had claimed his plea was not voluntarily given due to ineffective assistance of counsel and stress at the time.

On February 14, 2005, the district court issued a six-page written opinion denying Moses' motion. The court found that the judge at the 1992 plea hearing had failed to advise Moses of all of the consequences of his guilty pleas as required by 22-3210, *i.e.*, he did not specifically enumerate Moses' right to a jury trial, his right to cross-examine the State's witnesses, his right to compel the attendance of witnesses, his right to appeal if convicted by a jury, his right to be represented at trial by counsel, and his right to testify at trial if he so chose although he could not be required to do so. The district court found, however, that under the totality of the circumstances it could be determined that Moses was sufficiently apprised of the consequences to render his pleas knowingly and voluntarily made.

Among other things, the court specifically relied upon the following factors:

"[1] Of much importance in this court's decision is the fact that the defendant was transported from the penitentiary to this jurisdiction and was present at the time of oral arguments on the motion. The defendant certainly was given the opportunity by the court to testify under oath but declined to do so. Consequently, *there is nothing other than the claims contained in the pleadings to indicate that he in fact did not understand the legal consequences of his pleas of guilty.* [2] Also supportive of a finding that the defendant understood the legal consequences of his pleas, although not determinative standing alone, is the fact that *the defendant's lawyer explained in detail the contents of a Petition to Enter a Plea of Guilty after which the defendant affixed his signature indicating his understanding of the contents thereof.*

"[3] Lastly, *there is no reason set forth by the defendant of why he has waited for twelve years* during which time he has prosecuted a direct appeal, a prior proceeding pursuant to K.S.A. 60-1507, a recent proceeding pursuant to K.S.A. 60-1507 in which he failed to allege that he did not understand the legal consequences of his guilty pleas. The District Attorney, and understandably so, states that the witnesses in this matter are scattered, police officers have retired *and that to now attempt to provide the defendant with a jury trial would be extremely prejudicial to the state.*" (Emphasis added.)

## ANALYSIS

Issue: *Did the district court abuse its discretion in denying Moses' motion to withdraw his guilty pleas?*

*Standard of Review*

Motions to withdraw pleas are governed by K.S.A. 2004 Supp. 22-3210(d), which states:

"A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged. To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."

Under subsection (d) of 22-3210, the court may permit a defendant to withdraw a guilty plea after sentencing if doing so will correct a manifest injustice. The decision to deny a motion to withdraw a plea, even after sentencing, lies within the discretion of the trial court, and that decision will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Murithi*, 273 Kan. 952, 955, 46 P.3d 1145 (2002); *State v. Stough*, 273 Kan. 113, 119, 41 P.3d 281 (2002). Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion. *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003) (citing *State v. Bey*, 270 Kan. 544, 545-46, 17 P.3d 322 [2001]).

*Compliance with K.S.A. 22-3210 (Ensley 1988)*

Subsection (a) of K.S.A. 22-3210 (Ensley 1988) sets out the requirements for accepting a guilty plea:

"(a) Before or during trial a plea of guilty or *nolo contendere* may be accepted when:

(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases *the court has informed the defendant of the consequences of the plea* and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and *determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea*; and

(4) the court is satisfied that there is a factual basis for the plea." (Emphasis added.)

Moses contends that the trial court's failure to advise him of the consequences of his plea and the failure to determine that he *understood* the consequences of his plea, as required by 22-3210(a)(2) and (3), constitute manifest injustice entitling him to withdraw his guilty pleas. The State argues that under the totality of the circumstances, the court substantially satisfied the statutory requirements.

It is well-settled that an accused who enters a plea of guilty waives certain fundamental constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). However, "[f]or this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'" *Boykin*, 395 U.S. at 243 n.5 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 [1938]).

K.S.A. 22-3210 was enacted to ensure compliance with the due process requirements set out by the Court in *Boykin*. *State v. Heffelman*, 256 Kan. 384, 391, 886 P.2d 823 (1994); *Trotter v. State*, 218 Kan. 266, 268, 543 P.2d 1023 (1975). Although Kansas courts had long held that a plea of guilty had to be both knowing and voluntary to satisfy the requirements of due process, *Boykin* added the requirement " 'that the record must affirmatively disclose' a knowing and voluntary plea." *Trotter*, 218 Kan. at 268-69. Thus, 22-3210(a)(2) and (3) require the court to inform the defendant that by entering a guilty plea, he or she will be waiving these constitutional rights, and to determine that the defendant voluntarily entered the plea with an understanding of the consequences. *State v. Anziana*, 17 Kan. App. 2d 570, 571, 840 P.2d 550 (1992) (requires the court to inform defendants that by entering pleas they would be waiving constitutional rights, and to determine the pleas were made with an understanding of those consequences); *State v Moore*, 16 Kan. App. 2d 472, 476, 825 P.2d 537, *rev. denied* 250 Kan. 807 (1992) (same).

Here, the district court correctly found that the transcript of the 1992 plea hearing demonstrates the trial judge did not personally inform Moses that, as a consequence of entering pleas of guilty, he would be waiving his privilege against compulsory self-incrimination, his right to trial by jury, his right to confront his accusers, and his right to appeal. It also correctly found that the transcript reveals that the judge in 1992 did not address Moses personally to establish Moses understood he would be waiving specific rights.

Such failures, however, do not automatically result in successful withdrawals of guilty pleas. See *State v. Trotter*, 218 Kan. 266, 269, 543 P.2d 1023 (1975) (failure to strictly comply with 22-3210 is harmless if, upon review of the entire record, it can be determined the pleas were knowingly and voluntarily made); see also *Noble v. State*, 240 Kan. 162, 164, 727 P.2d 473 (1986) (Strict compliance with 22-3210 is not mandatory if, upon review of the entire record, the purpose of the rule is otherwise served.).

Accordingly, the State argues that review of the entire record, which includes the written plea petition, demonstrates that Moses' pleas were made with a full understanding of the rights he would be waiving and, therefore, reversal is not required. In support, the State asserts that the written plea petition signed by Moses explicitly sets out the constitutional rights he would be waiving and contains his acknowledgment that he understood he would be waiving those rights by entering the plea.

Moses responds that a plea petition containing a waiver of those rights cannot excuse the trial court's failure to personally advise him of the consequences of his pleas in open court as required by 22-3210(a)(2) and (3). He relies upon *State v. Browning*, 245 Kan. 26, 774 P.2d 935 (1989), *State v. Anziana*, 17 Kan. App. 2d 570, and *State v. Moore*, 16 Kan. App. 2d 472, to support his contention that the plea petition cannot substitute for statutory compliance.

In *Browning*, the defendant appealed the denial of his motion to withdraw his guilty plea for noncompliance with 22-3210. The appeal raised the issue of the extent to which a written plea agreement could substitute for the personal inquiry required by the statute. This court reversed the conviction due to a defective complaint and, therefore, did not reach the plea agreement issue. Neverthe-

less, to provide guidance to the bench, prosecutors, and criminal law practitioners, the court discussed the issue. We stated that although written plea agreement acknowledgments are encouraged, "such an acknowledgment is emphatically not a substitute for the requirements of K.S.A. 22-3210." 245 Kan. at 34.

Three years later, in two opinions written by Judge Davis, now Justice Davis, the Court of Appeals relied on our statements in *Browning*. In *State v. Moore*, 16 Kan. App. 2d 472, the court held that the written acknowledgment of rights forms and written entry of plea forms signed by the defendants did not cure the trial court's failure to inform the defendants in open court that as a result of their pleas they would be waiving their privileges against self-incrimination, their rights to a jury trial, and their rights of confrontation. Neither did the forms cure the trial court's failure to establish their understanding of such consequences. *Moore*, 16 Kan. App. 2d at 476-77. The Court of Appeals reversed and remanded for a new trial.

Similarly, in *State v. Anziana*, 17 Kan. App. 2d 570, the defendant contended that his plea was accepted in violation of 22-3210 because the trial court failed to inform him that by entering a plea he would waive his privilege against compulsory self-incrimination, his right to a jury trial, and his right of confrontation. The court had also failed to advise him of the potential maximum penalty he faced. *Anziana*, 17 Kan. App. 2d at 571. Even though the defendant had signed a written plea agreement that explained the waiver of his constitutional rights and set out the maximum penalty that could be imposed, the Court of Appeals held that the written plea agreement could not substitute for compliance with the requirements of 22-3210. It also held the district court had not established that the defendant had entered his plea with an understanding of the consequences. The Court of Appeals reversed and remanded for a new trial. *Anziana*, 17 Kan. App. 2d at 572.

In the instant case, we agree with the State that Moses signed a written plea petition that clearly set out the constitutional rights he would be waiving. But under the rationale of *Browning* and the rationale and holdings of *Moore* and *Anziana*, that document alone cannot serve as a substitute for the requirement that the court

*personally inform* him of the consequences of entering a plea and determine that he or she understands the consequences. As the United States Supreme Court explained in *Boykin*:

> "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable *in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.* When the judge discharges that function, he leaves a record adequate for any review that may be later sought [citations omitted], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." *Boykin v. Alabama,* 395 U.S. at 243-44. (Emphasis added.)

*Substantial compliance with K.S.A. 22-3210 (Ensley 1988)*

The State also argues, however, that substantial compliance with 22-3210 can be shown when, as here, the court personally asks the defendant about his or her understanding of the plea petition. We acknowledge that this court, in *State v. Browning*, 245 Kan. 26, quoted language from an Iowa case that suggests a possible scenario where the colloquy between the judge and the defendant about the contents of a written plea agreement could substitute for the trial court's failure to inform the defendant that entering a guilty plea results in the waiver of specific constitutional rights. See *Browning*, 245 Kan. at 33 (quoting *State v. Fluhr*, 287 N.W.2d 857, 864-65 [Iowa 1980]) (*"Nor was there sufficient inquiry into his comprehension of parts of the written plea form from which a compelling inference of understanding of the entire form might be drawn.").*

From that language, arguably such a colloquy would include, at the very minimum, an inquiry into the defendant's understanding of that part of the document that sets out the waiver of rights. For example, if the trial judge had specifically asked Moses if he had read that part of the plea petition setting out the waiver of constitutional rights, and if he understood he would be waiving those rights, that inquiry would come closer to meeting the substance of the 22-3210 requirement.

In the instant case, however, there was no specific inquiry into Moses' understanding of the waiver of rights portion of the plea petition. The judge only asked general questions about the document — whether Moses had an opportunity to go over the plea

petition with his attorney and whether he understood everything in it. We cannot infer from that limited inquiry that Moses understood the constitutional rights he would be waiving by entering guilty pleas. Accordingly, we conclude that such a general inquiry is insufficient to satisfy the requirement that the court personally advise the defendant that by entering a guilty plea, he would be waving certain constitutional rights, and from that discussion, determine that the defendant understands those consequences.

As at the district court level, however, the State also urges application of the doctrine of laches. It contends that Moses' unexplained delay of almost 12 years in raising the 22-3210 challenge, combined with the prejudice it would suffer if it were placed in the position of trying the case after that amount of time, justified the court's denial of the motion to withdraw the pleas. We acknowledge that in denying the motion the district court noted the unexplained delay in raising an issue Moses could have raised in prior post-conviction challenges, and the prejudice alleged by the State. However, it did not hold that these reasons alone justified denial of the motion. Instead, it considered these factors as part of the whole in denying the motion.

We agree with the district court's approach. We affirm our prior holdings stating that we review the entire record, *i.e.*, consider the totality of the circumstances, to determine whether failure to strictly follow 22-3210 is reversible error. See, *e.g.*, *Noble v. State*, 240 Kan. at 164; *James v. State*, 220 Kan. at 287; *State v. Trotter*, 218 Kan. at 269; see also *State v. Byrd*, 203 Kan. at 52, 453 P.2d 22 (1969) ("An analysis of our decisions indicates permission to withdraw a plea depends upon the facts and circumstances of each case.").

We also agree with the district court's decision refusing to allow Moses to withdraw his guilty pleas. A review of the entire record reveals a number of factors supporting the district court's decision.

First, the district court correctly found nothing other than the claims contained in the pleadings to indicate that Moses in fact did not understand the legal consequences of his guilty pleas. While the court brought Moses from prison to the hearing, Moses apparently elected not to testify. Moreover, his attorney's motion to

withdraw the pleas simply states the statutory requirements were not met, with no factual recitation. Moses' pro se motion may have contained facts, but it is not included in the record on appeal. Its placement in the record on appeal is Moses' obligation. *State v. Holmes*, 278 Kan. 603, 612, 102 P.3d 406 (2004). Moses' approach makes it difficult for him to meet his burden of proving manifest injustice and the district court's abuse of discretion in denying his motion to withdraw. See *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003).

Second, the district court correctly found, based upon the 1992 plea hearing transcript excerpted earlier in the opinion, that Moses' 1992 counsel had explained in detail the guilty plea petition to Moses before Moses signed it, indicating his understanding of its contents. At that hearing, Moses informed the court that there was nothing in the petition he did not understand or had any questions about and that he understood its contents. As mentioned, the petition contained paragraph 7 (acknowledging his right to plead not guilty and the affording of the enumerated constitutional rights) and paragraph 8 (acknowledging that his guilty plea meant waiver of all of his constitutional rights enumerated in paragraph 7). Moreover, Moses' 1992 counsel had certified on the petition that he had fully discussed the contents of the certificate with Moses on November 12, 1992. Paragraph 3 of the certificate stated: "To the best of my knowledge and belief, the statements, representations and declarations made by the defendant in the foregoing petition are in all respects accurate and true." Finally, according to the transcript Moses informed the court he was satisfied with his defense counsel's performance. Whether a defendant is represented by competent counsel is a factor to consider in determining whether a guilty plea may be withdrawn. See *State v. Bey*, 270 Kan. 544, 545, 17 P.3d 322 (2001); see also *United States v. Graves*, 106 F.3d 342, 343 (10th Cir. 1997) (factor of defendant's assistance of counsel).

Third, the district court correctly found that no reason had been provided by Moses for the 12-year delay between the pleas and the filing of the motion to withdraw. Moses had opportunities to do so, both in his motion and later in person at the hearing. He

chose not to testify, and his counsel offered no explanation for the delay. As we stated in *State v. Stough*, 273 Kan. at 118-19, the motion to withdraw the guilty plea "should be filed with reasonable promptness, as soon as defendant or his counsel learns facts which would justify the court in setting aside the plea." (citing *State v. Nichols*, 167 Kan. 565, 578, 207 P.2d 409 [1949]).

We initially observe that the legal basis for Moses' claim had been in existence for over 30 years at the time of his motion. *Boykin v. Alabama*, 395 U.S. 238, was decided in 1969. Kansas statutes incorporating *Boykin's* requirements were passed a year later. "[T]he present statutory provision was enacted in 1970 as 22-1210(7) (with language nearly identical to K.S.A. 22-3210(d)." *State v. Stough*, 273 Kan. at 118. Further, even if we assume Moses had forgotten the facts from the 1992 hearing, we observe that his appellate counsel for the 1507 issues had asked for the hearing transcript in October 2001, almost 3 years before Moses filed his withdrawal motion. Consequently, we cannot conclude that Moses filed his motion with reasonable promptness, a factor in considering a motion to withdraw a plea. See *State v. Stough*, 273 Kan. 113; see also *United States v. Graves*, 106 F.3d at 343 (whether defendant has delayed in filing his withdrawal motion is a factor); *People v. Castaneda*, 37 Cal. App. 4th 1612, 1618, 44 Cal. Rptr. 2d 666 (1995) (discussing a 12-year delay); *State v. Tweed*, 312 Mont. 482, 490, 59 P.3d 1105 (2002) (one factor is "the promptness with which the defendant attempts to withdraw the plea").

As part of the district court's analysis concerning the unexplained 12-year delay, it correctly found that Moses had filed at least one prior direct appeal and at least one prior 1507 motion since his guilty pleas were offered in 1992. In short, Moses could have brought a prior challenge based upon 22-3210 in those relief vehicles — particularly the 1507 motion in 1993 when he argued that his pleas had been involuntarily given — but did not. When the State made this argument at the hearing, Moses did not respond. These failures are a valid consideration when determining whether a plea should be withdrawn. See *Hart v. State*, 116 Nev. 558, 564, 1 P.3d 969 (2000) (In considering whether to allow withdrawal of a guilty plea, "where a defendant previously has sought relief from

the judgment, the defendant's failure to identify all grounds for relief in the first instance should weigh against consideration of the successive motion."); see also *United States v. Graves,* 106 F.3d at 343 (whether the withdrawal would waste judicial resources; inconvenience the court).

Finally, the district court correctly found that the State presented evidence of the prejudice it would suffer if it had to go to trial on this case after such a lengthy passage of time. Moses presented no evidence controverting this allegation. Prejudice to the State is a valid factor for consideration. See *United States v. Graves,* 106 F.3d at 343 (resulting prejudice to the government). As the Montana Supreme Court stated in *State v. LeMay,* 144 Mont. 315, 321, 396 P.2d 83 (1964):

> "One cannot delay until the witnesses are gone and the prosecutrix has reconstructed her life so that she would be unwilling to testify, and then make a motion to withdraw his plea of guilty in the expectation that no one will prosecute or testify against him. If such procedure was encouraged certainly justice would be circumvented. When there is an unreasonable delay in making a motion to change a plea of guilty, the defendant must show justification for such a delay or the trial court will properly refuse the motion on the basis of this delay. This is necessary to protect the public in criminal prosecutions."

See also *People v. Palmer,* 49 Cal. App. 2d 567, 572, 122 P.2d 109 (1942) (appellate court held it would be mockery of justice to permit defendant to withdrew his plea after his flight and concealment for 12 years, after material witnesses may have died or disappeared).

There are other factors which, although not mentioned by the district court, are relevant for our consideration in the instant case.

First, at the time of his pleas, Moses was 27 years old and familiar with the criminal justice system, having been convicted in two different cases in Arkansas 9 years earlier and eventually released on parole for these crimes. See *Trotter v. State,* 218 Kan. at 269 ("The appellant was 34 years old and no stranger to the criminal justice system. Less than a year had passed since he had been released on parole after serving six years on a sentence for felony offenses similar to those with which he was charged in the instant case."); *James v. State,* 220 Kan. at 287. Moses' prior involvement in the criminal

justice system suggests he had obtained some understanding of his constitutional rights independent of his guilty plea petition and counsel's explanation in 1992.

Second, Moses heard the State's evidence at the preliminary hearing and was well apprised of the State's case against him. See *Trotter v. State*, 218 Kan. at 269. Accordingly, he had a good idea of his chances to receive a Hard 40 sentence, based upon evidence of aggravating circumstances such as his heinous, atrocious, and cruel conduct and committing the crime for the purpose of receiving money or something of monetary value. See K.S.A. 1992 Supp. 21-4624(5); K.S.A. 1992 Supp. 21-4625(3) and (6). The guilty plea petition reveals sentencing had been discussed with Moses by counsel. He clearly pled guilty in exchange for the State dropping its request for a Hard 40 sentence, which in effect reduced a sentence of 40 years without parole eligibility to a sentence of life with parole eligibility in 15 years according to the statutes in effect in 1992. See K.S.A. 1992 Supp. 22-3717(b); *State v. Tweed*, 312 Mont. at 490 ("the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for the dismissal of another charge" considered by court in abuse of discretion analysis). Moses' favorable plea bargain is particularly a factor worthy of our consideration because he has never asserted his innocence. See *United States v. Graves*, 106 F.3d at 343 (whether a defendant has asserted his or her innocence is a factor to consider).

Because we cannot say that no reasonable person would take the view adopted by the district court, we hold it did not abuse its discretion when it found no manifest injustice warranting approval of Moses' motion to withdraw his guilty pleas.

We also briefly address two additional arguments raised by Moses. First, he argues that the trial court violated his Fifth Amendment right against compelled self-incrimination when, during the plea proceeding, it failed to advise him of his rights and obtain his waiver before asking him to explain what he did. Second, he argues that the signature on the plea petition was not his. These arguments were made for the first time on appeal. We will not consider them based upon the authority of *State v. Solomon*, 257

Kan. 212, 221-22, 891 P.2d 407 (1995) (court refused to consider claim defendant's plea must be set aside because he was not advised of privilege against self-incrimination and right to confront accusers where those arguments were not presented to trial court), and *Noble v. State*, 240 Kan. at 169-70.

Affirmed.

BEIER, J., concurring: I concur in the result reached by the court and in the majority of its rationale. I believe the record amply demonstrates Moses failed to meet his burden of demonstrating manifest injustice justifying withdrawal of his guilty plea. I write separately only to emphasize that I would not rely on laches or any "laches-like" arguments to reach the outcome in this case.

LUCKERT and ROSEN, JJ., join the foregoing concurrence.