NOT DESIGNATED FOR PUBLICATION

No. 118,915

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ADRIAN M. HALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed March 22, 2019. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Adrian M. Hall contends the district court abused its discretion in denying his postsentencing motion to withdraw his plea. He claims that the record fails to show his plea was knowingly and understandingly made because of his lack of communication with his attorney and his medication usage. Finding no error, we affirm.

1

*Factual and procedural background*

On January 31, 2015, four people were parked in a vehicle in Wichita, Kansas. Suddenly, another car approached and its driver fired several bullets into the vehicle, injuring at least two people. The driver of the parked vehicle identified Hall as the shooter and picked Hall from a photo lineup. He had been in an altercation with Hall the day before when Hall threatened him and struck him with a firearm. The State charged Hall with multiple crimes: one count of attempted first-degree murder, three counts of aggravated battery, two counts of aggravated assault, two counts of criminal discharge of a firearm, and one count of criminal threat.

Pending resolution of his case, Hall refused to eat or drink and stopped speaking. As a result, both defense counsel and counsel for the State moved for a competency evaluation and treatment. Hall's motion noted that Hall was "completely unresponsive and [was] lying on the bed in the fetal position, covered head to toe in a blanket." The district court granted the parties' motions and ordered the transfer of Hall from the Sedgwick County jail to Larned Correctional Health Facility.

After Hall spent several months in Larned, the district court found him competent to stand trial. At that time, Hall's communication with defense counsel was through hand-written notes because he refused to speak.

While preparing for trial, Hall's defense counsel told Hall that he might want to consider a plea because the State's evidence was compelling. Soon after, Hall asked his attorney to pursue a plea. Eventually, the State offered a plea agreement which Hall accepted.

The agreement required that Hall plead no contest to all counts as charged. In exchange for his no contest plea, the State agreed to recommend "[t]he low number in the

2

appropriate guidelines grid box for each felony, that the court follow the presumption of prison, that the counts run concurrently to one another, and that this case run consecutively to any others, should any exist." The State would also recommend that Hall pay more than $10,000 in restitution, plus any other amount assessed before sentencing. Hall would also be allowed to argue for any lawful sentence.

At the plea hearing, Hall affirmatively answered that he understood his rights and that he had discussed the plea with his attorney. Hall noted that he was taking Zyprexa for depression and Coumadin as a blood thinner but did not indicate that his medications would affect his ability to understand the plea proceedings before him. Hall explicitly denied having any mental or emotional disorder that affected his ability to understand his rights. The district court accepted Hall's plea.

At sentencing, the district court recognized that the State's recommendation under the plea agreement was a controlling 147-month sentence. But the district court found that the harm caused by Hall's crimes warranted a controlling 226-month sentence instead.

Almost nine months after sentencing, Hall filed a pro se motion to withdraw his plea. Hall claimed that he was innocent, that his attorney was ineffective, and that he did not understand his plea because it had been made while he was heavily medicated and confused. The district court held an evidentiary hearing on Hall's motion, at which Hall and his trial counsel testified. The court admitted Hall's medical records from the Larned Correctional Health Facility and the Sedgwick County jail.

Lois Lynn, Hall's trial counsel, testified that Hall claimed he was innocent and had an alibi—he was at a birthday party at the time of the shooting. But Lynn was unable to substantiate Hall's alibi. While she represented Hall, he stopped communicating verbally and refused to eat and drink. As a result, she filed a motion to determine competence.

3

Lynn met with Hall several times but "it was very difficult to communicate with him." Hall would not talk to her but would sometimes write notes. If Lynn asked him a question, then he would write "yes or no or whatever." After Hall was transferred to Larned, Lynn described him as "totally nonresponsive." When Lynn's supervising attorney visited Hall in Larned, Hall was completely naked. Hall "wouldn't put on any clothing. He was urinating on the floor, and he was just totally nonresponsive."

Lynn explained that she met with Hall at least six times. She felt that five of those six times, Hall was able to adequately communicate with her about his case and three of those times Hall was able to assist in his defense. Because the State had significant evidence against Hall and because Hall had little evidence in his favor, Lynn recommended that Hall consider a plea. Hall accepted an agreement shortly after Lynn's recommendation. Lynn believed that entering a plea was in Hall's best interest.

Hall testified regarding his recollection of Lynn's representation of him and his time in Larned Correctional Health Facility and the Sedgwick County jail. Hall remembered that Lynn represented him but could not remember how many times they had met. Hall did not remember how long he was in Larned or when he was sent back to Sedgwick County. Hall did not remember his plea hearing or being sentenced because he was "heavily medicated with psychotropic drugs."

On cross-examination, the State provided evidence that Hall had last been administered the drugs listed in his motion to withdraw his plea over five months before his plea hearing. Hall maintained that the drugs were still in his system at the time of the plea, saying that he felt the drugs' effects after sentencing, but he provided no evidence to support that claim.

At the close of the evidentiary hearing, Hall requested additional time to find a toxicology expert to show the effects, if any, that Hall's medications had on him at the

4

time of his plea hearing. The district court granted a continuance for that purpose, yet Hall never provided the court with any such evidence.

Ultimately, the district court found that Hall failed to meet his burden to show that manifest injustice would result if Hall's plea remained in place. It denied Hall's motion to withdraw his plea. Hall timely appeals.

*Did the district court abuse its discretion in denying Hall's motion to withdraw his plea?*

Hall argues that the district court erred by denying his postsentence motion to withdraw his plea. After sentencing, a defendant can be permitted to withdraw a plea to "correct manifest injustice." K.S.A. 2018 Supp. 22-3210(d)(2). Manifest injustice occurs where something is "obviously unfair or shocking to the conscience." *State v. Barahona*, 35 Kan. App. 2d 605, 609, 132 P.3d 959 (2006).

Generally, an appellate court will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). On appeal, "[t]he appellant carries the burden of establishing an abuse of discretion. [Citation omitted]." *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009). Judicial discretion is abused if the action: "(1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law . . . ; or (3) is based on an error of fact." *State v. Jones*, 306 Kan. 948, Syl. ¶ 7, 398 P.3d 856 (2017).

The factors we generally consider in determining whether a defendant has shown the manifest injustice necessary to withdraw a plea after sentencing mirror those we consider when reviewing for good cause to support a presentence motion. See *Johnson*, 307 Kan. at 443. Those factors include: (1) whether the defendant was represented by

5

competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). Some of those other factors that may also support the denial of a postsentence motion to withdraw a plea include: reasonable promptness of the motion, defendant's failure to raise the issue in a prior direct appeal or K.S.A. 60-1507 proceeding, prejudice to the State, defendant's prior involvement in criminal justice system, and defendant's receipt of favorable plea bargain. See *State v. Moses*, 280 Kan. 939, 950-54, 127 P.3d 330 (2006).

K.S.A. 2018 Supp. 22-3210(a) embodies due process requirements and adds statutory conditions precedent to the acceptance of a plea. See *State v. Edgar*, 281 Kan. 30, 37, 127 P.3d 986 (2006). Under the statute, a nolo contendere plea may be accepted when:

"(1) The defendant or counsel for the defendant enters such plea in open court; and

(2) in felony cases the court has informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime committed on or after July 1, 1993, and of the maximum penalty provided by law which may be imposed upon acceptance of such plea; and

(3) in felony cases the court has addressed the defendant personally and determined that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea; and

(4) the court is satisfied that there is a factual basis for the plea." K.S.A. 2018 Supp. 22-3210(a).

The trial court must make sure that the defendant understands the consequences of the plea. *Moses*, 280 Kan. at 948-49. The failure to strictly comply with K.S.A. 2018 Supp. 22-3210 may be reversible error unless a review of the entire record demonstrates that the plea was knowingly and voluntarily made and otherwise accepted by the trial judge in compliance with the statute. See *State v. Ebaben*, 294 Kan. 807, 816, 281 P.3d 129 (2012).

Hall relies solely on the third *Fritz* factor, arguing that his plea was not fairly and understandingly made. He contends that the record cannot affirmatively show that his plea was fairly and understandingly made because his communications with his attorney were limited and because he was under the influence of "psychotropic" medications.

We review the record to determine whether it adequately shows that the district court complied with K.S.A. 2018 Supp. 22-3210 and that Hall entered his plea fairly and understandingly. We find that it does.

First, Hall entered into a written plea agreement that detailed the consequences of his plea. The agreement states that Hall understood and consented to the agreement and consulted with his attorney before entering into the agreement. The agreement included a deal to request the low number in the presumptive guidelines grid box and to run the sentences concurrently. The plea also allowed Hall to argue for a lesser sentence, but the State did not drop any of the charges against Hall in exchange for his plea. And the district court did not impose the low sentence and also ran the sentences stemming from count 3 and count 8 consecutive to each other, instead of running all sentences concurrently. Still, in light of the evidence presented against Hall at the preliminary hearing, the plea agreement was a favorable one.

Second, although Hall did not communicate verbally with his attorney, the record shows that Hall consulted with his attorney and considered the benefits and consequences

7

of entering a plea. Lynn discussed Hall's options and explained to him that a plea agreement was likely his best option because the State's case against him was strong. By a written note, Hall then told Lynn that he wanted to pursue a plea. Once the plea agreement was offered to him, Hall expressed satisfaction with the fact that the agreement allowed him to request a lesser sentence than listed in the agreement. Ultimately, Hall accepted the terms of the agreement, even after Lynn explained to him that it was unlikely that the district court would accept a request for probation due to the facts of the case.

Third, the district court detailed the consequences of Hall's plea at the plea hearing and ensured that Hall understood those consequences despite the fact that he was taking medications. At the outset of the plea hearing, the district court administered an oath to Hall in which Hall acknowledged that he had discussed each part of the plea with Lynn:

> "You do solemnly swear that the statements you make during the course of this hearing shall be the whole truth and nothing but the truth; and you further acknowledge and swear that you have read and discussed with your attorney each and every part of the Acknowledgement of Rights and Entry of Plea document, and that the answers which appear therein are true and correct so help you God."

Hall acknowledged and agreed to the oath. The district court then informed Hall of the nature of the charges and of his constitutional rights that he would waive by pleading. The court also explained the maximum penalty Hall was facing and that the court was not bound by the terms of the plea agreement.

The district court also asked Hall if he suffered from any mental or emotional disorder that would affect his ability to understand his rights. Hall answered each of these questions with an appropriate response, none of which required that the court make any further inquiry. And as explained by the district court, Hall's responses "were in the context of the questions as asked." The district court took the additional step of asking

8

about Hall's medications. The district court described the beginning of that discussion at Hall's motion hearing:

"I asked him, 'Do you suffer from any mental or emotional disorder that affects your ability to understand your rights?' He answered, 'No.' I asked 'Do you have any other medical condition, any kind of illness or disease that affects your mental capacity in any way?' The defendant answered, 'No.' I asked, 'Do you routinely take any medications?' The defendant answered, 'Yes.' I asked, 'Tell me what you take and what they are for.' Defendant said, 'Zyprexa.' 'Pardon me?' He repeated. Ms. Lynn indicated, 'Zyprexa.' 'What is it for?' Defendant, 'For depression.' 'Okay. Any others?' Ms. Lynn then offered, 'He takes Coumadin for blood clots.'"

After inquiring about his medication at the plea hearing, the district court then delved into the issue further:

"Well, let's talk about the medication for the depression. Obviously, Mr. Hall, I'm not a doctor but I have some understanding of what the symptoms are of depression, and I would assume that the medication is prescribed to help alleviate or minimize those symptoms, and, in fact, to allow you to think more clearly and with a better understanding. Is that basically what it's for?"

Hall answered affirmatively.

And the district court gave Hall one final "opportunity [ ] to ask questions . . . about the charges, the plea agreement, anything at all about the case." The district court explained: "[I]t's necessary that I make a finding that your plea is being entered freely and voluntarily of your choice, with no improper influence, and that you understand the consequences; that is, what you're getting yourself into by pleading no contest, the penalties and sanctions that can be imposed." But Hall had nothing to ask or add. The plea hearing transcript affirmatively shows Hall entered his plea fairly, understandingly, and voluntarily. The district court was able to observe Hall when he stated that he

9

understood the nature of the charges against him, the constitutional rights that he was giving up with his nolo contendere plea, and the consequences of his plea.

Finally, the district court allowed Hall a continuance to gather expert testimony regarding the influences, if any, Hall's medications from Larned might have had on him at the time of his plea hearing. But Hall never presented the court with expert or other evidence that the medications he was given during his stay at Larned could have negatively affected him five months later. And as discussed earlier, the district court properly inquired about the medications Hall was taking at the time of the plea. The district court further inquired into Hall's state of mind and determined that he understood the charges he was facing.

After reviewing the record, we find no abuse of discretion in the district court's finding that manifest injustice would not result from leaving Hall's plea in place. See *State v. DeAnda*, 307 Kan. 500, 507-08, 411 P.3d 330 (2018) (finding no abuse of discretion when the district court found no good cause to withdraw defendant's plea, although he alleged his cognitive, emotional, and developmental problems created an uncertainty as to whether his plea was entered understandingly); *Schaefer*, 305 Kan. at 595-96 (finding that the district court did not abuse its discretion when it considered defendant's medications and state of mind before deciding that defendant's no contest plea was voluntary, knowing, and intelligent and that good cause did not exist for defendant to withdraw his plea before sentencing). Although Hall refused to speak verbally to his attorney, he was given sound legal advice and was able to consider his plea options before entering his plea. Moreover, the record does not support Hall's claim that he was under the influence of psychotropic medications when he entered his plea.

Affirmed.

10