NOT DESIGNATED FOR PUBLICATION

No. 121,569

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SCOTT REINEKE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed November 13, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Scott Reineke appeals from the denial of his K.S.A. 60-1507 motion, construed by the district court as a postsentence motion to withdraw his plea under K.S.A. 2019 Supp. 22-3210(d). Reineke claims his trial counsel was ineffective for failing to adequately investigate favorable defense evidence prior to negotiating a plea agreement and failing to properly advise him of the terms of the plea agreement. Upon review of the record before us, we find Reineke's claims are not persuasive. The district court did not abuse its discretion with the denial of Reineke's postsentence motion to withdraw his plea. We affirm.

1

Reineke was charged with one count of theft and one count of burglary in Case No. 13CR767 and with four counts of making a false writing and five counts of theft in Case No. 13CR1304. In a global plea agreement, Reineke agreed to plead guilty to all 11 charges in both cases upon the State agreeing to dismiss charges against Reineke's wife and to join in recommending probation at sentencing. The agreement also called for the State to recommend the aggravated or high number in the appropriate sentencing grid box for each count with the sentences for all 11 counts running consecutive to each other in each case and for the sentences in 13CR1304 to run consecutive to the sentences in 13CR767.

Reineke signed the plea agreement entitled "Defendant's Acknowledgment of Rights and Entry of Plea." In the plea agreement, Reineke acknowledged his attorney had advised him of the terms of the agreement and he understood the consequences of entering the plea. At the plea hearing, the district court thoroughly advised Reineke of his constitutional rights and asked if he wished to waive those rights and enter a plea. Reineke responded:

- He understood his rights;
- he wished to waive his right to a trial and enter a plea;
- he fully understood the rights he was waiving;
- he understood the charges he was pleading to and the consequences of entering his plea; and
- he had no questions about the plea agreement.

The district court accepted Reineke's guilty pleas and found him guilty on all 11 counts.

The plea agreement stated the State was not bound to recommend probation if Reineke committed new crimes or failed to appear at any court hearings after entering his pleas. Prior to sentencing, Reineke was charged with fleeing and eluding law enforcement. The State moved to revoke Reineke's bond based on the new felony charge, and the district court issued a warrant. Reineke also failed to appear for sentencing as scheduled, and the district court issued a second warrant based on Reineke's failure to appear.

Reineke was subsequently arrested and filed a motion to dismiss his attorney, set aside his pleas, and reduce his bond. A hearing occurred on Reineke's motion where Reineke asserted it was his attorney's fault for not communicating with him, for not obtaining a continuance of the sentencing hearing after he had surgery, and for not requesting a reduction of his bond. Reineke stated he wished to withdraw his plea in the burglary charge because he did not believe the State would follow the plea agreement based on the new felony charges. The district court denied Reineke's motion and set the matter for sentencing.

At the sentencing hearing, given Reineke's conduct after he entered his pleas, the State withdrew its recommendation for probation and asked the district court to impose a total controlling sentence of 45 months' imprisonment for both cases. Reineke told the district court he wanted to take responsibility for his actions. He confirmed he had asked his attorney to withdraw his motion for a dispositional departure and asked the district court to sentence him to 45 months' imprisonment. The district court expressed its concerns about Reineke's extensive criminal history and the circumstances of his current convictions—particularly, that Reineke seemingly deceived his wife into pawning stolen property, which resulted in charges against her that were later dismissed under the plea agreement. The district court then sentenced Reineke to 36 months' imprisonment in 13CR767 with a consecutive sentence of 38 months' imprisonment in 13CR1304.

Reineke's direct appeal was transferred to the Kansas Supreme Court pursuant to K.S.A. 20-3018(c). On April 28, 2015, his sentences were affirmed by summary order under Supreme Court Rule 7.041A(d) (2014 Kan. Ct. R. Annot. 66); no opinion was issued.

Reineke is also serving a sentence of 12 months' imprisonment in Case No. 14CR258 consecutive to the sentences in 13CR767 and 13CR1304. Reinke initially appealed 14CR258 but later withdrew his appeal.

In 2015, Reineke filed his pro se K.S.A. 60-1507 motions relating to 13CR767 and 13CR1304. Although not specifically captioned therein, Reineke's motions also appeared to assert claims related to 14CR258. Counsel was appointed to represent Reineke and filed a memorandum and addendum, reframing and clarifying the issues. Ultimately, Reineke alleged his trial counsel, Stephen Mank, was ineffective for:

- failing to properly advise him regarding the plea agreement;
- failing to investigate and pursue certain defense evidence;
- failing to consult with Reineke regarding sentencing;
- failing to obtain a continuance of sentencing;
- failing to ensure his pro se speedy trial motion was heard by the district court; and
- improperly withdrawing the departure motion at sentencing.

Reineke asserted he would not have entered his guilty pleas but for Mank's alleged ineffective assistance. The district court held an evidentiary hearing at which Reineke and Mank both testified. Given the extent of Reineke's claims we choose to set out their respective testimony in some detail.

Reineke claimed Mank told him 13CR767 and 13CR1304 would be consolidated under the plea agreement. Reineke believed he would receive a lesser prison sentence under a consolidated plea agreement because his criminal history category C would only apply to the primary charge in 13CR767 and his sentences for the rest of the charges in both cases would be determined based on criminal history category I. However, because the cases were not consolidated, Reinke's criminal history category C was applied to the primary charge in both 13CR767 and 13CR1304, and those sentences were ordered to run consecutive. Reineke further alleged he believed the plea agreement would become null and void based on the new charges filed against him in 14CR258. He asserted his understanding was the pleas in 13CR767 and 13CR1304 would automatically be withdrawn and the cases would go back on the trial docket.

Reineke claimed Mank failed to investigate evidence and witnesses to use in his defense. He testified he told Mank to obtain security video from a Dillons store, which would have showed him previously using the tools he had in his possession during the burglary. He also claimed he wanted Mank to obtain fingerprint samples from the tools and contact witnesses who could testify he was the lawful owner of the tools. Reineke asserted he was the rightful owner of the tools, claiming he legally purchased them from someone who later died.

Reineke further asserted the charges in 14CR258 were the result of mistaken identity. He claimed an individual named Brian had taken his vehicle and driver's license and was the person who actually drove the vehicle and fled from law enforcement. Reineke alleged he asked Mank to locate Brian and other witnesses who could testify Reineke was not the driver, but Mank did not do so.

Reineke testified he believed the plea agreement had become null and void after he was charged with fleeing and eluding and his 2013 cases would go back on the trial docket. Therefore, he filed a pro se motion for speedy trial in 13CR767 and 13CR1304.

5

However, Mank did not communicate with him regarding the motion. Reineke claimed he had several complaints with Mank's performance, but the district court denied his request to dismiss Mank. Reineke felt Mank was not communicating with him enough and failed to properly advise him regarding a potential issue for appeal in 14CR258. Reineke also complained that Mank withdrew and abandoned the departure motion at the sentencing hearing in 13CR767 and 13CR1304. Reineke claimed he told Mank in early January he would be having surgery around the time of sentencing. However, he acknowledged Mank never told him the sentencing hearing had been continued.

Mank testified he represented Reineke in all three cases. He met with Reineke several times over the pendency of his cases, but Reineke was difficult to communicate with because he would disappear for extended periods of time. He recalled discussing the State's evidence in 13CR767 and 13CR1304 with Reineke. Reineke told Mank he was the rightful owner of the tools found in relation to the burglary charge in 13CR767. Mank testified he did not believe Reineke because someone had seen him going into the garage and the homeowner had accurately identified the tools with great specificity, describing the handle on a set of pliers that had been chewed on by the homeowner's dog. Mank agreed Reineke gave him the name of a potential witness; however, when Mank's investigator attempted to locate the witness, he learned the witness had died three weeks earlier. In any event, Mank believed it was irrelevant whether the tools belonged to Reineke because he could have used his own tools to commit the burglary. Whether Reineke used previously stolen tools or stole the tools during the burglary did not matter because the burglary charge could still be proven based on Reineke entering the garage with the intent to commit a theft or certain other crimes therein. Mank did not recall Reineke asking him to have the tools fingerprinted or telling him about security footage from a Dillons store.

Mank agreed Reineke had told him he owned some of the property associated with the charges in 13CR1304. Reineke claimed he bought the items from someone he thought

was the lawful owner of the property. Mank did not believe Reineke was truthful with him because at least one of the charges specifically alleged the serial numbers of the property and Mank had reports showing the property belonged to someone else. Mank also believed it was irrelevant whether Reineke stole the items or bought them from someone who, perhaps unknown to Reineke, had actually stolen the items. The property at issue related to the charges of making a false writing. When Reineke sold the items to a pawn shop, he claimed he had owned the items for several years. Mank testified this "was the point of concern." In other words, even under Reineke's account of the events, the statements he made on the pawn slip still would have constituted a false writing because he lied about how long he had owned the items.

With regard to the charges in 14CR258, Mank testified his investigator located someone named Brian but that person refused to provide any useful information. Mank's investigator also spoke to other potential witnesses, but they likewise refused to provide any information and said they wanted nothing to do with Reineke.

Mank testified he advised Reineke the State's evidence was strong and he would likely be convicted if he went to trial. According to Mank, Reineke's main objective was to avoid going to prison. Mank told Reineke his best chance of not going to prison would be to enter a plea and began negotiating a plea deal. The negotiations produced several proposed plea agreements. Reineke ultimately accepted the offer providing for a joint request by the parties for Reineke to receive probation subject to a lengthier underlying sentence. Mank discussed Reineke's options with him before Reineke accepted the plea agreement. Mank informed Reineke he was subject to a special sentencing rule based on his extensive prior convictions. Mank explained the sentencing judge would have to make a finding for Reineke to be placed on probation and could still impose a prison sentence in spite of the parties' recommendations. Mank indicated Reineke had no questions as they discussed the plea agreement and he never told Reineke the plea agreement would be voided if he committed a new crime.

Mank testified that after the plea hearing he sent Reineke a letter reminding him it was important to stay out of trouble prior to sentencing. But between the plea and sentencing hearings, Mank was unable to locate Reineke. Mank spoke with Reineke's wife the week prior to the scheduled sentencing hearing, and she told Mank she had not seen Reineke in the past week. Reineke did not show up on the date of sentencing, and Mank did not know why.

The district court denied Reineke's motion to withdraw his pleas. The district court found Reineke's testimony was not credible. The district court noted Reineke's extensive criminal history and found he was well aware of the effect of his pleas and sentences based upon his prior involvement in the criminal justice system. The district court found Mank's performance was objectively reasonable and Reineke knowingly entered his pleas. Reineke now appeals. Additional facts are set forth as necessary herein.

ANALYSIS

Reineke argues the district court erred in denying his plea withdrawal motion. K.S.A. 2019 Supp. 22-3210(d)(2) provides: "To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." Appellate courts will not disturb a district court's denial of a postsentence motion to withdraw plea absent an abuse of discretion. *State v. Johnson*, 307 Kan. 436, 443, 410 P.3d 913 (2018). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). It is Reineke's burden to show an abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Generally, on a motion to withdraw a plea the district court looks to the *Edgar* factors to determine if the defendant has demonstrated good cause to withdraw a plea

*prior to* sentencing: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. These factors should not, however, be applied mechanically and to the exclusion of other factors. [Citations omitted.]" *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014); see *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the district court should not ignore other relevant facts which may exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

The same factors are generally used by the district court to determine whether a defendant has shown the manifest injustice necessary to withdraw a plea *after* sentencing. See *Johnson*, 307 Kan. at 443; see also *State v. Moses*, 280 Kan. 939, 950-54, 127 P.3d 330 (2006) (noting other factors may support denial of postsentence motion to withdraw plea, including reasonable promptness of motion; defendant's failure to raise issue in prior direct appeal or K.S.A. 60-1507 proceeding; prejudice to the State; defendant's prior involvement in criminal justice system; and defendant's receipt of favorable plea bargain).

On appeal, Reineke only argues he should have been allowed to withdraw his pleas based on Mank's ineffectiveness for lack of investigation and the fact Reineke received a greater sentence than he expected. Reineke has not addressed his other claims Mank was ineffective for:

- failing to consult with Reineke regarding sentencing;
- failing to obtain a continuance of sentencing;
- failing to ensure his pro se speedy trial motion was heard by the district court; and
- withdrawing the departure motion at sentencing.

9

Accordingly, those points are waived and abandoned. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

Reineke's brief fails to identify directly to which case(s) his remaining claims apply. Before the district court, Reineke generally asserted Mank was deficient in his investigation of all three cases. But he now argues he "was prejudiced because he received sentences of 36 months and 38 months in prison, instead of the maximum of 51 months that he was expecting." Those were the sentences he received in 13CR767 and 13CR1304. Reineke makes no mention of the 12-month sentence he received in 14CR258. Therefore, he has waived and abandoned any argument he misunderstood the sentence he would receive in 14CR258. See *Arnett*, 307 Kan. at 650.

Reineke further argues he set forth a colorable claim of actual innocence by "[testifying] that there was available proof that he was the true owner of property he was accused of stealing, such as fingerprinting the tools, video footage from a [Dillons] and some witnesses who had used the tools with him." While Reineke was accused of stealing property in both 13CR767 and 13CR1304, the tools were only relevant to the burglary and theft charges in 13CR767. There were no allegations of stolen property in 14CR258. Insofar as Reineke complains Mank's investigation was deficient, his arguments on appeal refer only to 13CR767. Thus, he has waived and abandoned any argument that Mank was deficient in his investigation of 13CR1304 and 14CR258. See *Arnett*, 307 Kan. at 650.

The district court found Mank negotiated a favorable plea agreement for Reineke and Reineke received the bargained-for consideration of having the charges against his wife dismissed, a favorable sentencing recommendation by the State at sentencing for probation, and the State's agreement not to file another case against Reineke. The district court also found Reineke "had a very intimate knowledge of the potential effect of his pleas and the potential sentences" based on "[his] . . . extensive knowledge of the

10

criminal justice system." And the district court found Reineke lost the favorable sentencing recommendation from the State with his commission of the fleeing and eluding crime.

The district court found Reineke's claim he did not understand the plea agreement or potential sentence was refuted by the fact Reineke was "very specific" in wanting the district court to sentence him in 13CR767 and 13CR1304 before he entered his plea in 14CR258 in order to avoid raising his criminal history score, which would have increased his sentences in the 2013 cases. The district court also determined Reineke's claim that he thought the commission of a new crime would nullify the plea agreement and the 2013 cases would go back on the trial docket was "preposterous." The district court subsequently discussed Reineke's lengthy criminal history, stating "he has in excess of 70 actual felonies," and found the evidence supported the fact Reineke understood the plea agreement.

The evidence before us reflects Reineke understood the terms of the plea agreement and the potential sentences. While alternative plea agreements were discussed, Mank explained to Reineke the terms of the agreement he ultimately entered into giving Reineke the chance for probation. The cases were not consolidated under the plea agreement, which also clearly provided the State would not be bound to recommend probation if Reineke committed new crimes or failed to appear in court. Mank also explained to Reineke:

- A special sentencing rule applied because of his prior theft and burglary convictions;
- The sentencing judge would have to make a finding the special rule did not apply in order for Reineke to be given probation; and
- The sentencing judge did not have to follow the parties' recommendations in the plea agreement.

At the plea hearing, the district court told Reineke the cases had not been consolidated and the sentencing judge did not have to follow the recommendations of the plea agreement. The district court also thoroughly explained the potential sentences Reineke could face if he pled to the charges. Reineke told the district court he understood the agreement and had no questions before entering his pleas.

With regard to his attorney's investigation, Reineke limits his argument to Mank failing to investigate whether the tools found on Reineke during the burglary in 13CR767 belonged to Reineke. The district court found a fingerprint analysis of the tools would not "prove anything except [Reineke] handled the tools." The district court did not appear to address the potential security footage or Mank's attempts to contact certain witnesses. However, the district court twice asked whether Reineke had anything to add or wanted the court to make additional findings, and Reineke did not ask for any additional findings.

Generally, a party bears the responsibility to object to inadequate findings of fact and conclusions of law to give the district court an opportunity to correct any alleged inadequacies. *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). When no objection is made to a district court's findings of fact or conclusions of law on the basis of inadequacy, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017). Where, however, the record does not support such a presumption and the lack of specific findings precludes meaningful review, an appellate court may consider a remand. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Here, remand is not required as the record sufficiently supports the presumption the district court made all findings necessary to support its decision. The district court also made explicit credibility findings, stating, "[Reineke's] testimony and criminal history is so full of dishonest statements that it is hard to believe anything Mr. Reineke has to say at this point in time." The district court went through Reineke's extensive

12

criminal history, noting 61 convictions for crimes involving dishonest conduct or false statements. Reineke also lost credibility with the district court when he testified during his rebuttal he lied to the court when he entered his pleas.

Based on the district court's finding the district court accepted Mank's account of his investigation and representation of Reineke. Mank attempted to locate a witness, but the witness had already died. Reineke mentioned other witnesses, but Mank did not believe their testimony would be relevant to the defense because Mank did not believe ownership of the tools was particularly relevant to the defense and the other witnesses identified by Reineke wanted nothing to do with him. After reviewing the evidence, Mank believed the State's case was strong and Reineke would likely be convicted if he went to trial. Mank advised Reineke of the same and began plea negotiations with his permission. Nothing about Mank's investigation appears objectively unreasonable.

Reineke has failed to show Mank's explanation of the plea agreement involving cases 13CR767 and 13CR1304 and his investigation of the cases was objectively unreasonable. Reineke has not shown the district court abused its discretion in denying his K.S.A. 60-1507 motion construed as a postsentence motion to withdraw his pleas.

Affirmed.