NOT DESIGNATED FOR PUBLICATION

No. 120,648

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RENATO SALCIDO,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed April 17, 2020.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*James Antwone Floyd*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

PER CURIAM: Renato Salcido appeals the district court's summary dismissal of his claim that the attorneys who represented him in his criminal trial were ineffective. Salcido speaks Spanish, and he claims the attorneys should have realized that a language barrier was preventing Salcido from understanding the plea agreement he entered into.

But the record shows that Salcido understood the plea agreement when he entered into it. After all, as the district court knew, Salcido's plea agreement was written in Spanish, and he had the assistance at the plea hearing of a court-certified Spanish interpreter and a Spanish-speaking attorney. Salcido has not shown any reason why the

transcript of that hearing doesn't accurately reflect the situation—that he understood the essential terms of the plea agreement when he entered into it. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Salcido pleaded no contest to the aggravated criminal sodomy of his stepdaughter. The issues in this appeal relate to what happened when he entered his no-contest plea and when he later tried to withdraw it. Central to this dispute is the extent to which a language barrier prevented Salcido from understanding what was happening during those proceedings. As a result, we must first review what happened leading up to Salcido's plea.

The State initially charged Salcido with two counts of aggravated indecent liberties with a child and one count of aggravated criminal sodomy. In exchange for his no-contest plea, the State dismissed the indecent-liberties charges and agreed to seek a 10-year prison sentence. That sentence was shorter than the presumptive sentence Salcido would have faced under this state's sentencing guidelines.

Salcido's native language is Spanish, and while he could read and write in that language, he could do neither in English. So Salcido's attorneys—one of whom was a native Spanish speaker—prepared a plea agreement written in both English and Spanish. For example, a section that read, "I am represented by a lawyer. His/Her name is Stephen Parker," was immediately followed by, "*Yo estoy representado por un abogado. El nombre de él/ella es Stephen Parker.*" Although we will quote only the English portions in the rest of our opinion, all provisions of the agreement were in both English and Spanish.

Salcido signed the agreement. One of the paragraphs described the consequences of pleading no contest: "I know that if I plead 'No Contest', I am thereby waiving all of the above rights and that there will be no further trial of any kind, either before the court or jury." By signing the agreement, Salcido also affirmed that he was satisfied with his legal representation, that he offered the plea voluntarily, and that he fully understood the charges against him and the content of the agreement.

Then at the hearing on his plea, Salcido had the help of a court-certified Spanish-language interpreter. The interpreter translated everything that the judges and attorneys said during the hearing into Spanish for Salcido. And she translated everything Salcido said into English for the judge and attorneys. Even so, it's apparent that Salcido was sometimes confused during the hearing. That's something that can easily happen in hearings like this. There's a lot at stake, and the defendant may not initially grasp legal concepts that the other participants are already familiar with. But whenever Salcido showed confusion, the court would either rephrase its question or Salcido would confer with Parker, his Spanish-speaking attorney.

The first hiccup occurred when the court brought up a preliminary hearing. When the court asked Salcido if he wished to waive his right to that hearing, Salcido seemed confused. But he talked to Parker and then waived the right:

> "THE COURT: Do you wish to waive your right to a preliminary hearing?
> "MR. PARKER: If I may confer with him briefly, Judge.
> "THE COURT: Go ahead, sir.
> "MR. PARKER: I think he is now ready to answer that question, Your Honor.
> "THE COURT: Okay. Mr. Salcido, I take—take it you understand—I'm just asking you if you'll waive a preliminary hearing, and then we'll go to the plea, which you can plea no contest, guilty, or not guilty at that stage. Before I do that, do you have any questions?
> "MR. SALCIDO: (By the Interpreter) No, that's fine to—to withdraw it.

3

"THE COURT: Do you wish to waive your right to a preliminary hearing?

"MR. SALCIDO: (By the Interpreter) Yes."

The hearing then addressed the plea agreement itself. The court first reminded Salcido that he could go to trial if he didn't want the plea agreement:

"THE COURT: . . . At any time during the plea in the next ten minutes or so if you decide for some reason you do not—not want the plea agreement, you still would have a right to a full jury trial. . . . Do you have any question about that, sir?

"MR. SALCIDO: (By the Interpreter) No, that's fine."

Then before reading a list of Salcido's trial rights to him, the court reiterated that he would not have a trial if he pleaded no contest: "You have a right to do one of two things, to go ahead with the plea or tell me at any time you don't want the plea and that you want a trial. If you take the plea, you don't need a trial." And after listing the trial rights, the court again reminded Salcido of the consequences of his plea:

"THE COURT: . . . However, if you plead no contest today, you waive and you give up all these rights I just mentioned to you.

"Got any questions about what I just explained?

"MR. SALCIDO: (By the Interpreter) No, it's fine.

"THE COURT: Do you understand that a plea of no contest gives up these trial rights?

"THE INTERPRETER: Your Honor, the interpreter asks for repetition.

"THE COURT: Do you understand that a plea of no contest gives up these trial rights I just mentioned?

"MR. SALCIDO: (By the Interpreter) Yes."

The court went on to explain the difference between a guilty plea (which admits the charge), a not-guilty plea (which denies the charge), and a no-contest plea (which "just says you're not going to put up any contest"). Salcido said that he understood. He

4

became a bit confused when the court brought up probation, but after the court rephrased its question, Salcido said that he understood that the court had not promised to place him on probation. Salcido also agreed that his plea was voluntary, that he was satisfied with the court's treatment of him, and that he was satisfied with his attorneys' representation.

Some more confusion arose when the court discussed how the plea would affect his immigration status. When asked whether he was aware of those consequences, Salcido at first answered, "No." Parker asked to address the court and said that the United States would almost certainly deport Salcido after he served his term; he had discussed that several times with Salcido, he said. Salcido then agreed that they had discussed that.

But when the court asked Salcido if he wanted to proceed with the plea given the potential for deportation, Salcido twice said no:

> "THE COURT: And knowing that, do you wish to proceed today?
> "MR. SALCIDO: (By the Interpreter) No.
> "THE COURT: . . . Knowing that your plea today could affect your status in the United States, do you wish to continue with your plea of no contest today?
> "MR. SALCIDO: (By the Interpreter) No."

Parker interjected, saying that he thought Salcido was a bit confused and that he wanted to speak to him. The court told Parker to ask Salcido if he wanted a trial. After Salcido and Parker conferred, Parker said Salcido was ready to go ahead with the plea despite the risk of deportation. So the court repeated its earlier line of questioning:

> "THE COURT: Two questions. Do you understand that if you plead no contest today and are found guilty, that you could be deported—you could be deported because of that plea?
> "MR. SALCIDO: (By the Interpreter) Yes.
> "THE COURT: Do you wish to go ahead with your plea of no contest today?

5

"MR. SALCIDO: (By the Interpreter) Yes."

That satisfied the court and it moved on.

Finally, the court took Salcido's plea. It asked if he had read the plea agreement; he had. It asked if he had understood it; he had. And it asked if he wanted to plead no contest; he did. The court accepted that plea and scheduled a hearing for sentencing.

But on the morning of the sentencing hearing, Salcido informed Parker and John Duma, his other lawyer, that he was unhappy with their representation and wanted to withdraw his plea and go to trial. The court allowed Parker and Duma to step down and appointed a new attorney who then filed a motion to withdraw the no-contest plea. The motion argued that Salcido's inability to speak English prevented him from understanding that a no-contest plea would waive his trial rights. The State opposed that motion; the record, it said, made clear that Salcido understood the consequences of his plea and chose to proceed anyway.

The court held a lengthy hearing on the motion, during which Salcido, Parker, and Duma all testified. Salcido said that he'd been able to talk to Parker in Spanish without any problems. Salcido also admitted that he could understand the interpreter who translated during the plea hearing. Even so, Salcido said, he hadn't understood the court when it said that it would find him guilty if he pleaded no contest—he had thought no contest meant that he would have a jury trial and hadn't realized that he was agreeing to a 10-year prison sentence. Salcido also said that—contrary to his prior testimony—he hadn't read the plea agreement.

Salcido's non-Spanish-speaking attorney, Duma, testified that Salcido knew the consequences of a no-contest plea because Parker and Duma had gone over the plea agreement with him several times. He also said that Salcido never asked to go to trial.

6

Instead, he thought Salcido seemed relieved to get a 10-year sentence in the plea agreement; the presumptive sentence would have been life in prison with no chance of parole for 25 years because the victim in this case was less than 14 years old. See K.S.A. 2019 Supp. 21-6627(a)(1).

Parker said he also thought that Salcido had understood what a no-contest plea was. He and Salcido had reviewed the plea agreement line by line at least twice, Parker said, and they'd also had extensive discussions about Parker's plea negotiations with the State. And Parker didn't remember Salcido voicing displeasure with the no-contest plea until the morning of the sentencing hearing, after he had already entered it.

After hearing this testimony, the district court denied Salcido's motion, concluding that he hadn't shown good cause to withdraw his plea. At a later hearing, the court followed the plea agreement's recommendation and sentenced Salcido to 10 years in prison. Salcido then appealed to this court.

Salcido argued one issue only on that direct appeal—that the district court abused its discretion by not considering his claim of innocence when it denied his motion to withdraw the no-contest plea. We found no indication that the district court had disregarded Salcido's claim of innocence and affirmed the district court. *State v. Salcido*, No. 111,837, 2015 WL 2414418, at *3 (Kan. App. 2015) (unpublished opinion).

Within a year of our decision, Salcido filed a motion for habeas corpus relief under K.S.A. 60-1507. In that motion, Salcido alleged that he had received ineffective assistance from both his trial attorneys—Parker and Duma—and his court-appointed appellate attorney, Peter Maharry. Parker and Duma, he alleged, had allowed him to enter a no-contest plea when they should have realized that a language barrier prevented him from understanding its consequences. Maharry was ineffective, Salcido said, because he didn't raise an ineffective-assistance-of-trial-counsel claim during the direct appeal.

7

The district court denied Salcido's K.S.A. 60-1507 motion without holding a hearing on it. The court found that his ineffective-assistance claim against Parker and Duma was barred because he'd already made the language-barrier argument on direct appeal. But even if it weren't, the court said, Salcido's trial attorneys and his appellate attorney had all provided adequate representation.

Salcido now appeals the district court's order denying his claim for habeas relief.

ANALYSIS

Salcido argues that the district court erred by summarily denying his K.S.A. 60-1507 motion. He says that his ineffective-assistance-of-counsel claim against his trial attorneys raised potentially valid issues that warranted a substantive hearing. The State disagrees; according to it, the record conclusively establishes that Salcido isn't entitled to habeas corpus relief.

Generally, a district court has three options for handling a K.S.A. 60-1507 motion. The court may summarily deny the motion, require an evidentiary hearing, or hold a preliminary hearing to determine whether issues raised in the motion are substantial. *Sola-Morales v. State*, 300 Kan. 875, Syl. ¶ 1, 335 P.3d 1162 (2014). The district court must conduct an evidentiary hearing unless the motion, files, and record conclusively show that the movant isn't entitled to relief. 300 Kan. 875, Syl. ¶ 1. But allegations that are merely conclusions aren't enough; the movant must allege facts that warrant a hearing, and the factual basis for the hearing must either be in the motion or elsewhere in the court record. *Trotter v. State*, 288 Kan. 112, 131-32, 200 P.3d 1236 (2009).

Here, the district court chose the first route and decided that Salcido was not entitled to a substantive review of the merits of his claim. When the district court denies

8

relief based on a review of the existing files and without taking new testimony, we conduct an independent review of the motion and case file to determine whether they do conclusively show that the prisoner isn't entitled to relief. *Sola-Morales*, 300 Kan. at 881.

To succeed on his claim, Salcido needs to show two things: (1) that his attorneys' work was constitutionally deficient because it fell below minimum standards and (2) that the attorneys' substandard work prejudiced his defense. *Mattox v. State*, 293 Kan. 723, 725, 267 P.3d 746 (2011). The second part of that test ordinarily would require him to show a reasonable probability that the result of the trial would have been different but for the attorneys' performance. 293 Kan. at 725-26. But because Salcido was found guilty after pleading no contest, he must show a reasonable probability that he would not have entered a plea and instead would have insisted on going to trial had his attorneys provided adequate representation. *State v. Adams*, 284 Kan. 109, 118, 158 P.3d 977 (2007).

That's the standard to succeed on the merits of his K.S.A. 60-1507 motion. To get a hearing—as Salcido requests here—he needs to provide some factual basis suggesting that he can meet that standard. *Trotter*, 288 Kan. at 112. But the record clearly shows that Salcido understood what he was doing and knowingly entered the plea. That negates both parts of his claim, both inadequate performance by the attorneys and prejudice.

Parker was a native Spanish speaker, and Salcido had the help of a court-certified Spanish-language interpreter at every proceeding. The plea agreement, written in Spanish, explicitly stated that Salcido would waive all of his rights to a trial by pleading no contest. Salcido testified that he had read that agreement, and Parker said that they had gone through it line by line at least twice. Then at the plea hearing, the court told Salcido three times that his no-contest plea would waive his rights to a trial; Salcido said he understood and entered the plea.

9

In other words, the record conclusively shows that Salcido understood the consequences of his no-contest plea when he entered it; the fact that he didn't understand English is not pertinent given the Spanish-language resources provided to him. Salcido has provided only a conclusory allegation that his attorneys provided inadequate representation because they failed to see that he didn't understand what was going on. That's insufficient in the face of a record that demonstrates the opposite. See *Trotter*, 288 Kan. at 112-13. There is no reason to think that Salcido would have insisted on going to trial—he was well aware that he was waiving that right by pleading no contest.

In sum, the record conclusively shows that Salcido wasn't entitled to relief because he wasn't harmed by any alleged ineffective representation. The district court did not err when it summarily denied his K.S.A. 60-1507 motion without a hearing.

As an alternative basis for denying Salcido's motion, the State argues that his claim is barred by the doctrine of res judicata. Under that doctrine, all issues that the defendant could have raised during a direct appeal (but didn't) are generally considered to have been waived; a defendant may not assert them in a later habeas motion. See *State v. Kleypas*, 305 Kan. 224, 240-41, 382 P.3d 373 (2016), *cert. denied* 137 S. Ct. 1381 (2017). Our review of that question once again is unlimited, so we need not give any deference to the district court's decision that Salcido's claims were, in fact, barred. See *Bogguess v. State*, 306 Kan. 574, 579, 395 P.3d 447 (2017).

But the State must have overlooked our Supreme Court's decision in *Bogguess*, which found that res judicata does not bar issues related to the ineffectiveness of trial counsel when the issue hasn't been fully considered on direct appeal. 306 Kan. 574, Syl. Salcido didn't raise the ineffective-assistance issue on his direct appeal, so it wasn't considered there. So he was not procedurally barred from raising it in his habeas claim; indeed, that's customarily when a defendant should make such a claim. 306 Kan. at 580. Even so, for the reasons discussed above, he wasn't entitled to a hearing.

We therefore affirm the district court's judgment.